## STATE OF IOWA

AT

DES MOINES, JANUARY AND MAY

TERMS, 1913,

AND IN THE SIXTY-SEVENTH YEAR OF THE STATE.

---

CHARLES O. GRAY, as Administrator of the Estate of F. M.
Gray, Deceased, Appellee, v. THE CHICAGO, ROCK ISLAND
& PACIFIC RAILWAY COMPANY, Appellant.

**Instructions:** REFUSAL OF REQUESTS. The court is not bound to submit every requested instruction, though abstractly correct; and especially where the subject is sufficiently covered by the instructions as given by the court: Nor is it advisable to instruct minutely as to the legal effect of each evidentiary fact. The better practice is to state briefly and clearly the legal principles applicable to the issues, and leave the jury to apply them to the facts, thus avoiding possible confusion and the giving of undue prominence to particular phases of the evidence.

**Railroads:** CROSSINGS: CONTRIBUTORY NEGLIGENCE: INSTRUCTIONS. The court cannot say as matter of law that one about to cross a rail-

VOL. 160 IA.—1

way track must stop, look and listen for approaching trains; the rule is not that he shall as a matter of law observe any particular caution, but that he shall observe all cautions required by reasonable and ordinary regard for his own safety.

Same: INSTRUCTIONS: CONTRIBUTORY NEGLIGENCE: PREJUDICE. A railway crossing is a place where danger is always to be apprehended by travelers upon a highway, and the question of whether a crossing was of a dangerous character should not be submitted to the jury; but where the clear import of the courts instruction as a whole, upon the question of contributory negligence, was to state the rule that the care one about to enter upon a crossing must exercise for his own safety is proportionate to the peril to which he knew he. was exposed, and if the circumstances and conditions of the particular crossing increased the danger beyond that otherwise to be anticipated, then his duty of watchfulness for his safety was correspondingly increased, the statement contained therein that ''if you find the crossing where the accident occurred is dangerous, and he knew of the danger,'' did not render the instruction prejudicial.

Same: INSTRUCTIONS: ESTOPPEL. A party cannot claim on appeal that the court erred in giving an instruction, where his own requested instruction submitted the same question.

Same: INSTRUCTIONS: NEGLIGENCE. An instruction that no reliance on the exercise of care by trainmen, in giving the statutory crossing signals, would excuse an exercise of reasonable care on the part of one about to go upon the crossing to listen for approaching trains, was properly refused; because in effect telling the jury that reliance upon performance of such statutory duty could not be considered in determining whether a traveler used reasonable care in attempting to cross the track.

Same: EXERCISE OF CARE: PRESUMPTION. Both trainmen and a traveler upon the highway are entitled to assume that the other will exercise the care, in approaching the same crossing, that the law imposes upon them.

Same: INSTRUCTION: INSTINCT OF SELF-PRESERVATION: PRESUMPTION. Where the court instructed that the presumption that deceased was exercising due care for his safety, upon approaching the crossing in question, could only be applied where there were no eyewitnesses to his conduct at and immediately before going upon the track, a further instruction that the presumption against contributory negligence, arising from the instinct of self-preservation, could not apply when the deceased was within the view of witnesses was not necessary.

**Same.** Where the court clearly instructed that the presumption arising from the instinct of self-preservation could only be indulged where there were no eyewitnesses, it was not necessary to again state that the presumption would not obtain while deceased was within the view of a particular witness.

**Same:** CONTRIBUTORY NEGLIGENCE: INSTRUCTIONS. The court cannot ordinarily say as a matter of law how one about to cross a railway track should adjust his coat collar so as to permit him to hear an approaching train; and where the only evidence that deceased had his collar turned up about his ears at the time of the accident was that it was in that position when he was found in the wreck of his carriage, after being thrown some distance by collision with a train, a requested instruction that if deceased was wearing his coat with the collar turned up so as to obstruct his hearing, ordinary care required him to have it turned down, was properly refused.

**Same:** CROSSINGS: CARE: EVIDENCE. There is no statute requiring a railway company to maintain whistling posts at any particular distance from its crossings; but in view of the general custom to thus mark the distance from a crossing to aid the trainmen in giving the statutory signals, evidence of the absence of such posts is competent; as bearing on the reasonable sufficiency of the care exercised in the use of its crossings.

**Same:** CROSSING SIGNALS: REASONABLE CARE. The giving of the statutory crossing signals is not necessarily a full exercise of reasonable care on the part of a railway company in approaching a crossing. The peculiar circumstances at a particular crossing may be such as to require additional precautions.

**Accidental death:** DAMAGES: EXCESSIVE VERDICT. Where deceased was in vigorous bodily health, had an expectancy of over thirteen years, managed his own business in which his services were important, and had accumulated over $50,000, a verdict for $8,000 was not excessive.

*Appeal from Cedar District Court.*—HON. W. N. TREICHLER, Judge.

SATURDAY, FEBRUARY 15, 1913.

PLAINTIFF'S intestate was struck and killed by one of the defendant's trains upon a highway crossing. Alleging negli-

gence of the defendant with respect to such accident this action is brought at law to recover damages. The plaintiff obtained verdict and judgment, and defendant appeals.— *Affirmed.*

*F. W. Sargeant* and *Robt. J. Bannister, J. T. Moffit* and *J. L. Parrish,* for appellant.

*I. J. Hamiel, Ball & Ball* and *C. H. Mather,* for appellee.

WEAVER, C. J.—The decision of this case upon a former appeal will be found in *Gray, Adm'r, v. Railroad Co.,* 143 Iowa, 279, where the material facts are quite fully stated. On retrial the jury again found for the plaintiff, and defendant has again brought the record here for review. We shall restate the facts only so far as seems to be necessary for treatment of the questions which we deem of controlling importance as presented by the briefs of counsel.

The highway in question extends from north to south. It is approached by the railway at a somewhat acute angle from northwest to southeast. Just before reaching the point of intersection, the highway turns southwesterly, and crosses the railway nearly or quite at right angles. The deceased lived some ten miles north, but had on numerous occasions driven over this route to the town of West Liberty, and was, to some extent at least, familiar with the crossing and its surroundings. On the day in question, April 26, 1907, he left his home to go to West Liberty, driving a span of horses attached to an ordinary covered buggy. His approach to the vicinity of the crossing was noticed but by one witness, who saw him first at the top of a hill some seven hundred feet north of the crossing, a second time as he was about three hundred feet from the crossing, and a third time as he reached a point within a short, but not definitely fixed, distance before he actually entered upon it. These views were all had by the witness, one Mrs. Duple, who sat in the kitchen

of her home from four hundred and forty to five hundred and twenty feet to the eastward; the scope of her vision being limited by the windows of the house before which the deceased passed, and by her own distance from such windows. From the top of the hill to a point near the crossing the view from the highway of a train coming from the north is entirely cut off, or greatly obscured, by the banks of a cut, and buildings, trees, and brush. The point from which a person approaching from the north would get a view up the track is in dispute, and is variously estimated at from fifteen to fifty feet, and the length of track thus opened to observation in that direction is stated at from three hundred to six hundred feet. Quite soon after the deceased disappeared from sight in the direction of the crossing as above mentioned, the witness heard the crash of the collision. Persons coming to the scene of the accident very soon after its occurrence found the body of the deceased in the wreck of the buggy thrown to a considerable distance from the point of collision, and some of them testify that he was wearing an overcoat, the collar of which was turned up about his ears.

The petition charges the defendant with negligence in failing to sound the engine whistle or bell as provided by law in approaching the crossing, in operating the engine and train at an unreasonable rate of speed over a peculiarly dangerous crossing, in failing to exercise reasonable care and caution to look out for the safety of persons lawfully using the crossing, and in failing to stop or slacken speed when the enginemen saw, or in the exercise of reasonable caution ought to have seen, the deceased in a place of danger. The defendant denies the charge of negligence, and insists that deceased was himself negligent in going upon the crossing without due care for his own safety. Counsel have simplified the discussion by conceding in argument that the evidence is sufficient to take the case to the jury upon the alleged failure of defendant's trainmen to give the statutory signals for the crossing. They further admit that, under the ruling of this

court upon the former appeal, the question of contributory negligence on the part of the deceased was also for the jury. Under the issues as thus narrowed, we have to consider whether the record shows any prejudicial error by the court below in the trial and submission of these two questions of fact.

Of the errors assigned we shall take time to discuss only those which seem to be of controlling importance. Other points made are not sustained by the record or are clearly governed by the rules and principles approved and applied by us on the former appeal.

I. The defendant asked the court to instruct the jury as follows: "You are instructed that it was the duty of decedent to exercise reasonable care and caution in looking and listening for an approaching train, and, if necessary by reason of surrounding obstructions or the noise of vehicle, to stop and listen for a train before going upon this crossing, and the failure to do so would be negligence on his part." This request was refused, but on its own motion the court gave the jury the following instructions bearing upon the issue of contributory negligence:

1. INSTRUCTIONS: refusal of requests.

Paragraph 2. You are instructed that, before the plaintiff can recover in this action, he must satisfy you by a fair preponderance of the evidence that the death of F. M. Gray was caused by reason of defendant's negligence, and that said F. M. Gray did not, by his own negligence, contribute thereto.

Paragraph 3. In considering the question as to whether plaintiff's decedent was guilty of negligence which caused, or contributed to, his injury and death, you are instructed that if you find the crossing where the accident occurred is dangerous, and he knew of the danger in attempting to cross the same, he should make use of his senses of sight and hearing to guard himself from harm, and, if the use of his sight and hearing is interfered with by obstructions or noises, this would require proportionately increased vigilance to constitute reasonable care.

Paragraph 4. You are instructed that, in determining whether or not the plaintiff's decedent used ordinary care in listening to ascertain whether or not a train was approaching from the north, you may take into consideration what, if anything, was heard by other persons indicating the approach of the train, the noise of the moving train, if any, and the blowing of the whistle and the ringing of the bell, if you find the same were sounded. And taking into consideration all of the evidence upon these points, and all the other evidence before you bearing upon the question, if you believe that plaintiff's decedent by the use of ordinary care could have learned of the approach of the train in time to avoid injury, then the decedent was guilty of contributory negligence. Ordinary care is such caution as a reasonably prudent man would have exercised under all the surrounding circumstances.

Error is assigned upon the refusal of the requested instruction above quoted, and to the giving of the third paragraph of the court's charge. No exception is taken to paragraphs 2 or 4. We may assume for the purposes of this appeal that the requested instruction states a correct proposition of law applicable to the specific facts stated in the request, but it does not follow that its refusal constitutes error justifying this court in setting aside the verdict and ordering a third trial of the case.

The trial court is not bound to submit every requested instruction which may be unobjectionable as an abstract legal proposition. This is especially true where the court has sufficiently covered the point in its own charge, or where the giving of it may tend to mislead or confuse rather than enlighten the jury. The trial of a jury case always involves the presentation of a considerable volume of testimony as to more or less numerous specific facts upon each of which there is dispute, and from which the parties draw widely different inferences and conclusions. More often than otherwise an attempt to instruct the jury minutely as to the legal effect of each specific evidentiary fact would be impracticable and more confusing than helpful.

If, instead of thus endeavoring to cover the entire field of specific facts, the court either upon its own motion or at the request of a party selects or makes special mention of some one alleged fact or feature of the testimony and instructs upon its legal effect, this particular phase of the case is thereby given undue prominence, and may work substantial injustice. The better, and in most cases the only practical, method is for the court to state in brief and clear terms the general principles of law applicable to the issues being tried, and leave the jury to apply the law so given to the facts they find to be established by the evidence. Upon both grounds here suggested we think the court's action in refusing the requested instruction may be sustained. If we may except a single expression in the third paragraph of the charge (to which we shall hereinafter make more particular reference), the general rules of law upon the question of contributory negligence by the deceased are very fairly and fully stated. Indeed, as we have already noted, no exception is taken or urged to the second or fourth paragraphs. There the jury were not only told that the burden was upon plaintiff to show that the death of the deceased was caused by the defendant's negligence, and that deceased did not by his own negligence contribute thereto, but that, if the deceased by the exercise of ordinary care could have learned of the approach of the train in time to avoid the collision, then he was guilty of contributory negligence. This we think covered the ground sufficiently. A juror of ordinary experience and intelligence knows as well as court and counsel know that ordinary and reasonable care on the part of one approaching a railway crossing requires him to be vigilant in the use of his senses to ascertain that no train is approaching, and, when he is told that the exercise of such care must be shown, he does not need to be told as a matter of law the specific acts or the specific cautions which must be observed.

Indeed, under the law as it has long been recognized in this state, it is not within the province of the court to say as

a matter of law that a person about to cross a railway track is bound to stop, look, and listen for approaching trains. The limit to which the court may go in that direction is to say that if the circumstances surrounding the attempt to cross the track are such that, in the exercise of reasonable care, the traveler ought to stop or ought to look or listen at some particular point of the approach, then failure to do so will be negligence. In other words, the rule is not that the traveler must as a matter of law and at all crossings observe any one particular act of caution, but rather that he shall observe all the cautions required by reasonable and ordinary regard for his own safety, and this is, in substance, the rule embodied in the instructions given in this case.

2. RAILROADS: crossings: contributory negligence: instructions.

It is said, however, that the effect of the rules laid down in the second and fourth paragraphs of the court's charge are to a material degree neutralized by the third instruction. The criticism of this part of the charge is aimed at the use therein of the words, "If you find the crossing where the accident occurred is dangerous and he knew of the danger." While the thought which we think the court was endeavoring to express is unexceptionable, we think the language employed is so open to misunderstanding that it cannot be approved.

3. SAME: instructions: contributory negligence: prejudice.

In our judgment, however, the error involved in this particular phrase does not of itself require a reversal of the judgment. It is true that a railway crossing is an inherently dangerous place, or, rather, it is a place where danger should always be apprehended, and reasonable caution exercised by the traveler to guard against it. It follows, of course, that the court could not properly submit to the jury a question whether such was the character of this particular crossing. It is equally true to our minds that the court did not intend to submit any such question, and that, taken in connection with the entire charge, the jury could not have so misunder-

stood it. It will be observed that the court was instructing the jury upon the matter of contributory negligence, and the purport of the paragraph, as a whole, was to state and emphasize the admitted rule that the care which the deceased was bound to exercise for his own safety was proportional to the peril to which he knew he was exposed, and, if the peculiar circumstances or conditions of this crossing were such as to increase the danger beyond that otherwise to be anticipated, then his duty of watchfulness for his own safety was correspondingly increased. This is an undoubtedly correct proposition, and it is also defendant's theory of the law. We are unable to see how the unfortunate phrasing of a single sentence in this instruction could have influenced or misled the jury to the defendant's prejudice. We reach this conclusion the more readily from the fact that the instruction so strongly objected to appears to be but a paraphrase of an instruction asked on the part of the defendant itself. The request so made reads as follows: "The fact that the crossing in question was a dangerous one, if such be a fact, required the decedent, Gray, should use a degree of care looking and listening for approaching trains which should be commensurate with the danger. In other words, the more dangerous the crossing the greater the care which must be used by a traveler upon the highway in order that he may be said to have used reasonable and ordinary care under the circumstances."

It will be seen that, had the instruction been given in the form asked, it would have submitted to the jury the dangerous character of the crossing, the very question which counsel now strenuously insist was erroneously embodied in the court's charge. It is too well settled for discussion that, under such circumstances, an assignment of error will not be sustained, even if as an abstract proposition the instruction should not have been given.

4. SAME: instructions: estoppel.

II. The defendant also asked an instruction, in which,

after defining the duty of care to be exercised by the deceased in entering upon the crossing, the rule is laid down "that no reliance on the exercise of care by persons in control of the train in question in respect to blowing the whistle or ringing the bell would excuse the lack of reasonable care on the part of the decedent in listening to ascertain if a train was approaching from the north." The court denied the request, and in its charge to the jury said: "Par. 10. You are instructed that the engineer in the operation of his train had the right to assume that a traveler upon the highway would use ordinary and reasonable care before attempting to go across the railway track at the point of the accident, and, on the other hand, the deceased, F. M. Gray, had the right to assume that the usual and customary warnings would be given as required by law, and that the railway company's employees would use ordinary and reasonable care in approaching the highway crossing at which the accident occurred." Arguing the error assigned upon the refusal of the foregoing request and the giving of paragraph 10, counsel assumes that the trial court overlooked or disregarded the rule of law by which in an action of this nature negligence in the injured party is not excused by a showing of negligence on the part of the defendant. If that were the question presented by the record, the objection would, of course, have to be sustained. But clearly such is not the case. The court was not asked to charge that negligence of the defendant would not excuse contributory negligence of the deceased. It was asked to say to the jury, in effect, that reliance upon the performance of the railway's statutory duty with respect to crossing signals is not a factor to be considered in determining whether a traveler on the highway has used reasonable care in attempting to cross the company's track. Surely this cannot be the law. While the absence of signals is not an insurance to the traveler against the approach of trains, and he must still bear in mind the possibility that trains may be moving upon

5. SAME: instructions: negligence.

the track at any time with or without signals, yet the presumption that the trainmen will do their duty and sound their proper warnings is a material element in the situation, and is not to be ignored in passing upon the question of due care in entering upon the crossing. The duty of the traveler on the highway in the use of the crossing is in one sense of the word always the same whether the company's duty is or is not performed—he must exercise reasonable care—but the specific acts or precautions on his part which may be regarded reasonable where the railway company is by law required to give crossing signals for the protection of the public in the use of the highway may not constitute reasonable care where no such known duty exists. Whether so intended or not, the giving of the requested instruction would almost certainly tend to mislead the jury upon this important question and there was no error in refusing it. Had the defendant desired the jury to be instructed upon the admittedly correct proposition that negligence by the defendant would not excuse negligence of the deceased contributing to his own injury, it was a very simple matter to frame a paragraph stating the rule in clear and comprehensive terms, and, had it been so presented, we may presume it would have been given.

Nor was there any error in giving the tenth paragraph of the charge. It instructs the jury that the engineer controlling the movement of the train approaching the crossing and the deceased approaching the same crossing along the highway were each entitled to assume that the other would observe the duty of due care which the law imposed upon him. This principle is involved in the foregoing discussion, and we need not further consider it. It is not unlike the principle which prevails where a person has been injured upon a city street because of an alleged defect or nuisance which the proper authorities have failed to remedy or remove. Such persons, it is well settled, may assume that the city has done its duty,

6. SAME: exercise of care: presumption.

and the measure of due care on his part must be taken with reference to that presumption in his favor. So, on the other hand, the city may presume that he who makes use of the street will not blindly or heedlessly expose himself to a peril which is so clear or patent that all persons of ordinary perception and prudence will see and avoid it. The court's instruction was in harmony with this doctrine, and appellant's exception thereto cannot be sustained. The right of the traveler on the highway to assume that the proper signals will be given is not, as counsel seem to think, inconsistent with a duty on his part to exercise that degree of care for his own safety which ordinary prudence and caution dictate in view of all the proved circumstances. It should also be noted in this connection that the defendant requested the court to charge substantially as it did with regard to the right of the engineer in approaching the crossing to assume that the deceased would exercise proper care to avoid a collision, and we see no just ground for complaint in the fact that the same instruction stated the correlative right of the deceased to assume the exercise of like care on the part of the defendant. Both parties had legal right to use the crossing, and each was entitled to rely upon the other to make such use with due care to avoid interference with the rights of the other.

III. It is the theory of the plaintiff, and there is evidence tending to show, that no living witness observed the conduct of the deceased from the time he passed out of the view of Mrs. Duple, who saw him driving down the road in the direction of the crossing, to the time when he entered on the track, and was almost instantly struck by the train. In view of this condition of the testimony, the court gave the jury an instruction upon the presumption of due care arising from the instinct of self-preservation which ordinarily controls the action of a sane person, and leads him to avoid exposure to danger of injury or death. The instruction was

7. SAME: instruction: instinct of self-preservation: presumption.

framed in language approved by this court in *Lunde v. Packing Co.*, 139 Iowa, 695. Appellant concedes that the trial court was justified in following this precedent, and does not insist that the instruction was in itself erroneous, but it is argued that further instructions should have been given with reference to the application of the rule to certain specific facts alleged to have been developed by the testimony. To that end, the court was asked to give certain instructions, which are abbreviated and stated in the brief of counsel as follows:

First. That the presumption arising from the instinct of self-preservation was an item of evidence as distinguished from a presumption of law.

Second. That even though there was no direct evidence to bear upon decedent's contributory negligence, and therefore a case for the application of the presumption arising from the instinct of self-preservation, yet the burden was on the plaintiff on this question, and before they could find by a preponderance of all the evidence bearing on the subject, including the presumption, that the decedent was in the exercise of reasonable and ordinary care.

Third. The jury could not take into consideration the presumption arising from the instinct of self-preservation as bearing upon any fact as to which there was direct evidence.

Fourth. Applying the rule to the case at bar, they could not take this presumption into consideration as determining whether or not the decedent stopped his horses and buggy while the same were within the view of the witness Mrs. Duple.

Of the first point it may be said that the court, while not attempting to state the technical distinction between presumptions of law and of fact, did treat the presumption in question as one of fact, or, to use the language of counsel, as "an item of evidence," and told the jury that the presumption was not to prevail in plaintiff's favor if the facts and circumstances were such as to negative the truth of the matters in support of which such presumption was invoked. The statement of the second point, owing probably to a mis-

take of the printer or proofreader, is confused and incomplete, but we infer that counsel desired the court to instruct more fully upon the burden of proof of facts justifying an application of the rule as to the instinct of self-preservation. But we are unable to see how the requested instruction would add anything to what the court had said on this subject on its own motion. The jury were clearly told that plaintiff had the burden of establishing both the alleged negligence of the defendant and the freedom of the deceased from contributory negligence, and nothing is said in treating the matter of the presumption above mentioned, indicating that such burden is thereby removed or imposed upon the defendant.

The third and fourth points relate to the same feature of the case. The witness Mrs. Duple was the only witness who saw the deceased as he was approaching the crossing, and it is insisted that the jury should have been told that the presumption arising from the instinct of self-preservation could not apply to the conduct of deceased at any time when he was within the view of such witness. Here, again, we think the court had sufficiently covered the ground. It had instructed the jury that the condition upon which the presumption could be indulged existed only where there was "no eyewitness to the manner in which the decedent was conducting himself at the time and immediately prior to going upon the railway track." With this plain direction before them, it was manifestly unnecessary to add that the presumption could not obtain as to the conduct of the deceased while he was within the view of Mrs. Duple. The jurors we may assume were men of average intelligence, and, the rule being given, the court was not required to restate it in connection with each specific fact or circumstance found in the testimony. Mrs. Duple does not claim to have seen the deceased constantly from the time when he first came within her view, nor to have kept him in sight until he actually reached the crossing.

8. SAME.

Between the appearance of deceased at the top of the hill and his arrival at the point of collision there were at least three distinct intervals of time and space in which he was not within the sight of Mrs. Duple, or, so far as known, of any other living person. They were not long intervals, yet we cannot say as a matter of law they were insufficient to do whatever reasonable care required at his hand by way of precaution for his own safety. It was to his conduct at these times when there was "no eyewitness as to the manner in which he was conducting himself" to which the court directed the attention of the jury and more specific instruction was not needed.

IV. Defendant further asked an instruction that if deceased was wearing an overcoat with the collar turned up about his ears, so as to obstruct his hearing, then ordinary care required him to turn down the collar, and failure to do so would be negligence. The request was rightly refused. In the first place, the act could not amount to negligence within the issues of this case, unless it in some manner contributed to the injury complained of, and the instruction was not so limited. There is no evidence in the record that deceased drove upon the crossing with his collar turned up, except as that fact is sought to be inferred from the testimony of witnesses who arrived upon the scene after the collision, and say that, when the body was taken out of the wreck of the carriage, the collar of the coat was turned up about the man's head. There was no evidence that the collar was fastened or held in that position by a scarf or other means, and the fact that after colliding with a fast moving train, and being violently thrown from the track with the disordered wreck of the carriage, the clothing was found in the condition mentioned, affords but slight, if any, basis for a finding that such was its condition before the collision.

9. SAME: contributory negligence: instructions.

Again, it is difficult to conceive any state of facts under which the court is authorized to say as a matter of law how

a man shall wear or adjust his coat collar. It may well instruct a jury that if a person so obstructs his sight or hearing as to render him less able to protect himself against a danger reasonably to be apprehended, and thereby brings about or contributes to his own injury, he is without remedy, but the rule of the instruction requested goes much further than is justified by any rule or precedent called to our attention. A person using the public highway may properly dress in a manner to protect himself against the cold, and in this climate it often becomes necessary to such protection that he wear a heavy coat and collar. It is not always necessary to the reasonable exercise of his sense of hearing that the collar be "turned down." In many instances a mere inclination of the head to one side will so far expose the ear as to remove the obstruction, if any exist. Collars are of different types and styles, some of which, even when turned up, may not prevent an efficient use of the wearer's hearing. The court can no more declare it the duty of a traveler on the highway to "turn down his coat collar" as he approaches a railway crossing in order to escape a legal imputation of negligence than it can as a matter of law charge him with the duty of removing his coat entirely to enable him to move more quickly or surely in avoiding an impending collision. It is as we have already said sufficient to state to the jurors in clear terms the duty of the traveler to make reasonable use of his senses to detect and avoid the threatened danger, and leave them to say what specific acts of care and caution an ordinarily prudent man may be expected to observe or perform under such circumstances.

V. It was charged by plaintiff that defendant was negligent in failing to have a whistling post set near its track at a point sixty rods north of the highway crossing. The court instructed the jury that there was no statute requiring the company to maintain such posts, but that the evidence concerning such landmark or signal might be considered in connection with all the

10. SAME: crossings: care: evidence.

rest of the circumstances developed on the trial in determining whether due care had been exercised by the defendant. This instruction is objected to, but we can discover no error in giving it. The evidence strongly tended to show that, if any crossing signals were given of the approach of this train, it was not until the train had reached a point much less than sixty rods from the crossing. It is a matter of common knowledge that railroad companies very generally mark the statutory distance by posts which call the attention of the enginemen to their duty to sound the warnings, and if such posts or other equivalent markings of the place are omitted, and the enginemen are left to their own uncertain estimates of distances, we are of the opinion it is a point bearing upon the reasonable sufficiency of the care exercised by the defendant in its use of the crossing.

The jury were also told, in substance, that giving of the statutory signals would not necessarily satisfy all the requirements of reasonable care on the part of defendant, and that,

11. SAME: crossing signals: reasonable care.

if by reason of the peculiar circumstances and surroundings of this crossing its use was attended by peculiar or extraordinary dangers, the operation of the train should be conducted with reference to such conditions, and such precautions should be observed as might be required by reasonable regard for the rights and safety of persons using the highway at that point. That this is the law has frequently been held. See *Kinyon v. R. R. Co.*, 118 Iowa, 349, and cases there cited.

VI. Complaint is also made that the damages allowed are excessive. The verdict returned was for $8,000. We think they are not so great or so disproportionate to the

12. ACCIDENTAL DEATH: damages: excessive verdict.

injury which the evidence tends to show has been sustained by the estate of the deceased that we can properly interfere to order a reversal as an alternative of plaintiff's refusal to accept a lesser recovery. The defendant's expectancy of life was thirteen and one-half years. He was a man in vigorous

bodily health, was evidently of more than average capacity, had accumulated property to the extent of nearly $50,000, was the manager of his own business affairs, and his services to his estate were of very material value. We cannot say that such value has been so clearly over-estimated by the jury that we ought to interfere with the verdict. We cannot extend this opinion for the discussion of other propositions suggested by counsel. They are all fairly governed by the conclusions already announced. It should be said in conclusion that this case has been dragging its way through the courts for nearly six years. It has been twice tried and twice appealed. This court has twice held that the evidence upon the vital questions of negligence and contributory negligence was such as to carry both issues to the jury. Two juries have found against the defendant on both propositions. There should be an end to litigation. If the plaintiff is entitled to recover damages as the triers of fact have said upon two successive trials, he should not be compelled to waste or consume all its value and benefits in securing a final adjudication of that right. Most of the exceptions taken and argued pertain to form rather than substance and should a reversal be ordered the chances of a materially different  result are too remote to be measurable.

The case seems to have been fairly tried, the verdict has sufficient support in the evidence, there is no reversible error apparent in the record, and the judgment below must be, and it is, *Affirmed.*