EMIL A. ANDERSON, Administrator, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

NEGLIGENCE:  Smoke-Enshrouded Condition of Crossing—Belated Train—Instinct to Protect Self.  The smoke-enshrouded condition of a double-tracked railway crossing, coupled with the fact that no train was then due on the track where the fatal accident occurred, all aided by the recognized instinct of a human being to protect himself, may be sufficient to absolve the deceased from guilt of contributory negligence, as a matter of law.

RECEIVERS:  When Claims Barred—Earnings Devoted to Betterments.  When the earnings of a corporation under receivership are devoted solely to the betterment of the corporate

property, claims against the receiver become claims against the corporation upon the retransfer of the property, at least as to the extent of the betterments.

**RECEIVERS:** Order for Filing Claims—Noncompliance—Effect.
3   Claims against the receiver of a corporation, not filed within the time provided by court order, are not, upon the discharge of the receiver, barred against the corporation by reason of said order, when there has been no sale and distribution of the corporate property. It is immaterial that, when the claims are sought to be enforced, there has been a change of stockholders.

**NEGLIGENCE:** No Eyewitness Rule—Presumption (?) or Infer-
4   ence (?)   An instruction to the effect that, in the absence of eyewitnesses, the law *"presumes"* that an injured party exercised reasonable care, is inaccurate, but not to such extent as to constitute reversible error, when other instructions definitely place the burden on plaintiff *to show want of contributory negligence.*

SALINGER, J., dissents.

*Appeal from Washington District Court.*—K. E. WILLCOCK-SON, Judge.

JANUARY 15, 1920.

REHEARING DENIED OCTOBER 2, 1920.

ACTION for damages for the wrongful death of plaintiff's decedent. There was a verdict for the plaintiff, and defendant appeals.—*Affirmed.*

*F. W. Sargent, J. G. Gamble,* and *Eicher & Livingston,* for appellant.

*S. W. & J. L. Brookhart, Chas. A. Dewey,* and *W. H. Butterfield,* for appellee.

EVANS, J.—I.   The decedent was Charles Norberg. He and his companion were instantly killed, at about 6 P. M.

on January 25, 1917, by one of defendant's trains.  As found by the jury, the accident occurred on the crossing at North Marion Avenue, in the city of Washington, Iowa.  There were no eyewitnesses to the collision.  The bodies of both men were found beside the track, a short distance west of North Marion Avenue, within a few minutes after a west-bound passenger

1. NEGLIGENCE : smoke-en-shrouded condition of crossing : belated train : instinct to protect self.

train had passed.  Two main lines of track ran parallel for some distance westward out of the Washington depot.  On the northerly one, the Oskaloosa train moved westward from the depot on time, going about 12 miles an hour. Within a few moments thereafter, the Kansas City train started from the depot in the same direction, moving at 25 miles an hour or more.  This train was some hours behind time.  It overtook and passed the Oskaloosa train, at or about the North Marion crossing.  North Marion Avenue is a north and south street.  A few minutes before the accident, Norberg started for his boarding place.  His ordinary course would take him across the railroad tracks on the crossings of North Marion Avenue.  He was seen approaching North Marion Avenue while walking on a line parallel to the railway tracks and north thereof.  The circumstances proved, warrant the inference that he approached the railroads from the north, walking along the avenue.  He had crossed the northern track.  He was undoubtedly killed by a collision with the Kansas City train on the parallel track, 8½ feet farther south.  Both trains were running in excess of ordinance speed.  For that reason, the question of negligence of the railway company is not disputed on this appeal.  The defendant moved, however, at the close of all the evidence, for a directed verdict on the ground of the contributory negligence of the decedent.  The same point is urged here.  The general purport of the argument is that the circumstances appearing in evidence disclose that the decedent could not have come into collision with the defendant's train at such time and place, without contributory negligence on his part.  The burden was, of

course, upon the plaintiff to prove care upon the part of the decedent. He was a mere pedestrian, and had, therefore, full command of his own action, without any of the distractions of a frightened horse or a stalled automobile. He was familiar with the location and with the train schedules. On the other hand, the immediate circumstances had their confusion. The smoke of the Oskaloosa train covered the track of the Kansas City train. The presence of the Oskaloosa train also blanketed the Kansas City train from the view of Norberg, while he was on the north side of the Oskaloosa train. No train was due on the Kansas City track at that time, the train in question being several hours late. Norberg must have crossed the north track in front of the Oskaloosa train. The overtaking and passing of the Oskaloosa train by the Kansas City train at this point was an important circumstance. It may be that he did not, and even with diligence could not, have discovered the presence of the Kansas City train until after he crossed the north track. In view of the absence of eyewitnesses, the jury did have the right to consider the instinct of self-preservation, as a fact bearing upon the question of care. Just how much weight should be given to this fact would be also a jury question, in the light of all the circumstances. We are of the opinion, therefore, that the circumstances appearing in evidence were not conclusive, as a matter of law, upon the question of contributory negligence, and that the plaintiff was entitled to go to the jury thereon.

II. At the time of the accident in question, the railroad of the defendant corporation was being operated by its receiver, Jacob M. Dickinson. The original liability, if any, therefore, was that of the receiver, and not that of the corporation. It appears, also, that certain orders were made in the receivership proceedings by the Federal court having jurisdiction of the same. One of these provided that all claims against the receiver should be presented to the receiver on or before July 14, 1917, and that all claims not so presented should be thereafter barred.

2. RECEIVERS: when claims barred: earnings devoted to betterments.

The claim of the plaintiff was not thus presented. It is urged, therefore, by appellant that it has been fully adjudicated against the plaintiff, and that such order of the Federal court is a bar to further prosecution of the case. It further appears that, although the receivership proceeding was pending for some months, during which time the railroad was operated by the receiver, yet the receiver did not, at any time, sell the property of the corporation, nor convert it into cash or liquid assets; nor did he purport to distribute the property in his hands to the payment of creditors. The only distribution made by him was that of the receipts from the operation of the road. This was the status of the receivership proceedings when the corporation applied to the court for an order directing the receiver to restore to the corporation all its property. The basis of this application was, in substance and effect, a declaration of solvency on the part of the corporation, and an assurance of its ability to finance its assets in such a way as to satisfy or pay all its creditors. Such application was sustained by the court, and pursuant thereto, the receiver surrendered to the corporation all the assets in his hands. It will be seen from the foregoing that, although the receiver was in the first instance alone liable for the damages, if any, claimed herein, yet, as such receiver, he would have been entitled to pay such damages out of the moneys realized by him in the operation of the road. None of the moneys so earned were applied to the payment of such damages. On the contrary, the moneys realized in such operation were, to the extent of more than $1,000,000, applied to betterments of the road. In the restoration of its property, the corporation received the full benefit of these betterments.

Upon the state of facts here indicated, the United States Supreme Court has spoken fully. *Texas & Pac. R. Co. v. Bloom's Admr.,* 164 U. S. 636; and *Texas & Pac. R. Co. v. Johnson,* 151 U. S. 81. See, also, *Gray v. Grand T. W. R. Co.,* 156 Fed. 736; also annotation following *Carlson v. Mid-Continent Div. Co.,* L. R. A. 1918 F, 318, 320 to 324.

3. RECEIVERS: order for filing claims: noncompliance: effect.

The substance of the holding in the cited authorities is that, when the property, without sale thereof, is re- stored to the corporation, with the betterments made by the receiver, the corporation must be deemed to assume the liability of the receiver, to the extent, at least, of the betterments caused by the receiver out of the operation of the property. It is held, also, that the order entered by the Federal court, fixing a date within which this claim must be presented against the receiver, is not, in the absence of the sale of the property and a distribution of the assets to creditors, a bar to the litigation of plaintiff's claim. It is needless that we should add argument or discussion to these holdings by such court. They are decisive of the question before us.

It is urged by the appellant that a large amount of new stock was issued and sold to new stockholders, who were in the nature of innocent purchasers, and who will be preju- diced by the recognition of this liability. There was no change in the organization or entity of the corporation. The property was restored in its entirety to the same cor- poration from which it was taken. The realizing of a large amount of money by the sale of new stock was only a method of finance, and it was a recognition by the purchasers of the solvency of the corporation, and was the assurance to the court that the company was solvent, and financially able to manage its property as a going concern. Without such assurance, the court would not have restored the property. In brief, we do not think that the sale and purchase of new stock of the corporation is a fact which entitles the cor- poration to claim the status of an innocent purchaser of its own restored property.

III. The trial court gave the following instruction:

"And, on the question of the deceased Norberg being guilty of contributory negligence, as is alleged by defend- ant, you are instructed that, where there are no eyewit-

nesses as to the manner and way in which
**4. NEGLIGENCE: no-eyewitness rule: presumption (?) or inference (?)** the deceased was conducting himself at and immediately prior to the time he received the injuries, the law presumes that he was exercising such care and caution as men of ordinary prudence, judgment, and discretion would exercise, under like or similar circumstances, and in relation to the same matters, unless the facts and circumstances shown upon the trial negative such presumption; and you should indulge in such presumption in favor of the deceased, unless the facts and circumstances developed on the trial negative such presumption."

Appellant complains of this instruction on the ground that the necessary effect thereof was to cast upon the defendants the burden of proof on the question of contributory negligence. The difficulty presented by the instruction is its use of the word "presumption." Ordinarily, a presumption furnishes a resting place to the party otherwise having the burden of proof, and shifts upon the other party the burden of overcoming such presumption. We have held that the so-called presumption which obtains in the absence of eyewitnesses, that a decedent exercised due care, is a mere inference of fact, which is wholly for the consideration of the jury as an item of evidence; that the weight thereof is to be determined wholly by the jury, in the light of all the evidence.

There is room for the argument that the instruction under consideration herein runs counter to our holding in *Bell v. Incorporated Town of Clarion*, 113 Iowa 126. In the cited case, the inaccuracy of speech involved in the use of the word "presumption" for the word "inference" is pointed out. It was, nevertheless, recognized therein that the word "presumption" is not infrequently used as the equivalent and synonym of the word "inference." It is undoubtedly true that the word "presumption" is popularly used in such sense, and that such use thereof presses itself with great persistency upon lawyers and judges. Such use of the word has been very persistent in the instructions of

trial judges; and we have ourselves recognized the qualified meaning of the word in such case as is here presented. *Lunde v. Cudahy Packing Co.*, 139 Iowa 688, 695; *Gray v. Chicago, R. I. & P. R. Co.*, 160 Iowa 1; *Sanderson v. Chicago, M. & St. P. R. Co.*, 167 Iowa 90; *Merchants Trans. & S. Co. v. Chicago, R. I. & P. R. Co.*, 170 Iowa 378, 390.

In the last-cited case, the inference which may be drawn from the instinct of self-preservation, in the absence of eye-witnesses, is characterized as an "inference of fact," as a "presumption of fact," and as a "rebuttable presumption." This does not mean that these terms are all necessarily synonymous, or that they may not be distinguished; but it is a recognition that they all may be used in appropriate connection to denote the same thing. The instruction under consideration herein is quite an exact copy of the instruction approved in *Lunde v. Cudahy Packing Co.*, 139 Iowa 688, 695. This may be a form of surrender to the persistency of the use of terms in a popular sense, as distinguished from a strictly legal one.

On the whole, we think that the use of the word "presumption" in such qualified meaning is not misleading to the jury, if such use is accompanied with proper qualification pertaining to the burden of proof.

In this case, the jury was charged specifically and repeatedly, in Instructions 6, 10, 13, and 15, that the burden was at all times upon the plaintiff to prove that the decedent did exercise ordinary care.

Whether the *Lunde* case runs counter to the *Bell* case involves a construction of the opinion in the *Bell* case. Our own discussion therein is not free from ambiguity. It is not clear therefrom whether the reversal ordered therein was based upon the use of the word "presumption," or whether it was based upon the burden imposed upon the defendant by the instruction to the effect that such "presumption would be *overcome* by evidence that *satisfies* the minds of the jury that she was negligent." In the *Lunde* case, we put the latter construction upon the opinion in the *Bell*

case. We think such construction is fairly invited by the discussion therein.

Following the *Lunde* case, we think that the use of the word "presumption" in the qualified sense of an inference of fact was sufficiently guarded in the instructions as a whole so as to properly advise the jury of the sense in which it was used, and to advise it, also, that the burden of proof as to contributory negligence remained upon the plaintiff, and was not shifted to the defendant. The judgment below must, accordingly, be—*Affirmed.*

WEAVER, C. J., LADD, GAYNOR, PRESTON, and STEVENS, JJ., concur.

SALINGER, J. (dissenting). The majority opinion is, as to one point, put on the ground that, while the present holding is in conflict with *Bell v. Incorporated Town of Clarion,* 113 Iowa 126, it is in accord with the later cases of *Lunde v. Cudahy Pkg. Co.,* 139 Iowa 688, 695, and *Gray v. Chicago, R. I. & P. R. Co.,* 160 Iowa 1. In effect, the present holding is that the *Lunde* case and the *Gray* case have overruled the *Bell* case. I agree that it is proposed now to overrule the *Bell* case, but I am not satisfied that that case has before been overruled, nor satisfied that it should ever be overruled.

It cannot be seriously disputed that it is proposed to affirm the giving of an instruction, despite the fact that one in substance like it was disapproved in and reversed for in the *Bell* case. I am unable to see any substantial distinction between the instruction disapproved in the *Bell* case and the one it is now proposed to approve. In the case at bar, the following instruction is complained of:

"And on the question of deceased Norberg being guilty of contributory negligence as is alleged by defendant, you are instructed that, where there are no eyewitnesses as to the manner and way in which the deceased was conducting himself at and immediately prior to the time he received the injuries, the law presumes that he was exercising such

care and caution as men of ordinary prudence, judgment, and discretion would exercise under like or similar circumstances, and in relation to the same matters, unless the facts and circumstances shown upon the trial negative such presumption; and you should indulge in such presumption in favor of the deceased, unless the facts and circumstances developed on the trial negative such presumption."

In the *Bell* case, the instruction disapproved of was as follows:

"You are instructed that it is a recognized rule of human conduct that persons in their sober senses naturally and instinctively seek to avoid danger. The law, therefore, presumes, until the contrary appears, that the deceased, prompted by this natural instinct, did exercise care in approaching and stepping upon the sidewalk in question, where the injury occurred. But such presumption would be overcome by evidence that satisfied the minds of the jury that she was negligent."

In effect, this instruction was condemned in the *Bell* case because of the loose use of the word "presumption;" and it was said, while it might properly be charged that the instinct of self-preservation may be considered by the jury, and that such consideration might militate against the claim that there was no evidence of freedom from contributory negligence, yet "that is a very different thing from saying to the jury that a presumption arises therefrom requiring evidence to the satisfaction of the jury to overcome it." It seems to me that precisely the same may rightfully be said of the instruction at bar.

The remaining question, then, is whether the *Bell* case has been overruled by *Lunde v. Cudahy Pkg. Co.,* 139 Iowa 688, at 695. The decision in *Gray v. Chicago, R. I. & P. R. Co.,* 160 Iowa 1, at 14, 15, does not particularly change the question; because it is said in the *Gray* case that it is treated as being "framed in language approved by this court in *Lunde v. Cudahy Pkg. Co.*" The instruction in the *Lunde* case was this:

"Upon the question of plaintiff's intestate's contribu-

tory negligence, you are instructed that, where there are no eyewitnesses as to the manner in which he was conducting himself at the time he received the injuries, the law presumes that he was exercising such care and caution as men of ordinary prudence, judgment, and discretion exercise under like circumstances, and in relation to the same matters, unless the facts and circumstances shown upon the trial negative such presumption; and you should indulge in such presumption in his favor, unless the facts and circumstances developed on the trial negative such presumption."

It seems to me to be true that this instruction does not, in any substantial respect, differ from the one at bar, nor from the one condemned in the *Bell* case. And my answer to the *Lunde* case is that it should be overruled, because it is in conflict with the *Bell* case; and the *Gray* case should also be overruled, for the same reason. But one is not limited to that position. Whatever the *Lunde* case may in fact do, it does not profess to overrule the *Bell* case. It attempts to place the decision on peculiar and narrow ground which is not for consideration on the record now before us, and it expressly disclaims any conflict with or desire to overrule the *Bell* case. The ground of the decision in the *Lunde* case is stated to be that it is "now well settled that this burden may be met and the fact of due care may be established *prima facie* by showing that, when last seen, he was acting in the line of his duty, without any apparent negligence, and that there is no living witness or direct testimony as to the manner in which his death occurred. * * * The instruction in the present case not only does not relieve the plaintiff from the operation of the ordinary rule, which requires her to prove by competent evidence both the negligence of the defendant and the absence of contributory negligence by the deceased, but, on the contrary, the charge given the jury is carefully framed to prevent any confusion or misunderstanding on this point."

And the *Bell* decision is differentiated as follows:

"It is not inconsistent with the instruction now being considered. The instruction there held to be erroneous was to the effect that, in such cases, the burden of proof, on the question of contributory negligence, is shifted to the defendant, and that the deceased would be held to have exercised due care until the conclusion is 'overcome by evidence that satisfies the jury that he was negligent.'" *Lunde v. Cudahy Pkg. Co.,* 139 Iowa, 688, at 696.

I think the instruction at bar does just what the *Lunde* case says the *Bell* case rightly reverses for.

And if it comes to mere counting of noses and keeping track of the chronology of decision, *Sanderson v. Chicago, M. & St. P. R. Co.,* 167 Iowa, 90, at 103, expressly approves the reasoning set forth in the *Bell* case.

All I can find in *Merchants T. & S. Co. v. Chicago, R. I. & P. R. Co.,* 170 Iowa 378, at 391, is that an instruction holding that the so-called presumption arises in the absence "of direct evidence" as to whether proper care was exercised, is fundamentally erroneous, and that the so-called presumption may be for consideration, though there be an absence of *direct evidence* on whether proper care was exercised.

It is suggested that, since the charge of the court repeatedly tells the jury that the burden of proof on showing freedom from contributory negligence is on the plaintiff, it may fairly be said that, if the instruction complained of be erroneous, the error is rendered harmless by these broad and specific instructions as to the burden of proof. Juries are more apt to follow what is specific, narrow, and definite than generalities which may, in fact, include a specific matter. When the juror is advised that the plaintiff has a presumption in his favor, then, though it is possible, on close analysis, to ascertain that, notwithstanding the indulgence of such presumption, the general burden rests on the party for whom the presumption is indulged, the broad charge will not remove the definite statement that the party who has the burden also has a presumption in his favor. Indeed, it might well be understood

that, though the plaintiff had the burden of proof throughout, he discharged that burden, at least *prima facie*, when it is shown that no eyewitnesses were present.  Moreover, it is fairly to be doubted whether the broad instruction as to burden of proof thus relied on, instead of curing the charge as to the presumption, is not, in fact and at best, the creation of a conflict in instructions.