JOE L. BALL, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

CARRIERS: Good Condition Provable By Circumstances. The rule
1  which requires a shipper to show delivery to the carrier in good condition may be met by facts and circumstances from which the jury may fairly infer good condition at time of delivery, i. e., that the shipment was in good condition *just prior to the loading.*

EVIDENCE: Opinion Evidence—Value in "Good" Condition. A witness competent to speak of the value of stock may testify what the value would have been if the stock had been delivered at a given point in "good" condition—the record clearly showing that the term "good" was used in the sense of "undamaged."

RECEIVERS: Failure to File Claims. Damage claims accruing against
3  a carrier during the period of receivership are enforcible against the carrier after it receives back its augmented property from the receiver.

*Appeal from Jefferson District Court.*—D. M. ANDERSON, Judge.

FEBRUARY 9, 1921.

ACTION to recover damages to cattle shipped over defendant's line of railway, while it was in the hands of a receiver.

The action was brought after the property of defendant had been returned, and the receiver discharged. Trial to a jury, which resulted in a verdict and judgment for plaintiff for $249.75. Defendant appeals.—*Affirmed.*

*J. G. Gamble, A. B. Howland,* and *Simmons & Ross,* for appellant.

*X. C. Nady* and *Thoma & Thoma,* for appellee:

PRESTON, J.—Plaintiff alleges that, about February 2, 1916, he delivered to the defendant, at Kansas City, Missouri, in good condition and order, one carload of cattle, numbering 45 head, for transportation to Fairfield, Iowa; that, upon the arrival of the shipment in Fairfield, two of the cattle were dead, one was missing, seven others lame, cut, and bruised, and the balance of the cattle in the car damaged. Plaintiff asked judgment for $352.14.

1. CARRIERS: good condition provable by circumstances.

The answer, in three divisions, denied the receipt of the property by defendant, and alleged the fact of the receivership at the time in question, the contract under which the shipment was received by the receiver, and that plaintiff did not file his claim with the special master in time, and that it was, therefore, barred. The answer alleges further that the receiver operated the railway of defendant at a profit, and, upon the termination of the receivership, transferred all the property, including the earnings and profits arising during the receivership, to the defendant herein.

At the close of plaintiff's evidence and all the evidence, defendant moved for a directed verdict, on grounds hereafter stated.

The errors relate to rulings of the court in overruling objections by defendant, in overruling defendant's motion for a directed verdict because of plaintiff's failure to file his claim in time, and in ruling that the evidence is sufficient to sustain the verdict.

The appellant contends, and appellee concedes the rule to be, that, in order to charge a common carrier of goods for loss or damage thereto, the plaintiff must prove delivery to the carrier in good condition, and delivery by the carrier in a damaged

condition.  This being shown, plaintiff makes a prima-facie
case of liability.

1.  The main point relied upon by appellant for a reversal
is whether plaintiff, considering all the circumstances and all
proper inferences therefrom, has so shown, by a preponderance
of the evidence.  Defendant introduced no evidence as to the
loading or condition of the cattle when loaded.  The only evi-
dence for defendant was that of its agent at Fairfield, who gave
testimony as to some of the conditions at that time, and in regard
to freight bills, and making out plaintiff's claim, and so on.

The trial court instructed as follows:

"5.  The burden of proof is upon the plaintiff to show that
the carload of steers in question were delivered to the defendant
company at Kansas City, Missouri, for transportation to Fair-
field, Iowa, in good condition, and that they arrived at their
destination in a damaged condition.  If the plaintiff has so
shown by the preponderance or greater weight of the evidence
in the case, and has shown injury and damage to said steers
while in the defendant's possession, then he has made a prima-
facie case of negligence against the defendant company, and
that such negligence was the cause of such injury and damage.
In order to be relieved from such prima-facie case of negligence,
the burden is then upon the defendant to show that it was free
from negligence upon its part which was the cause of such injury
and damage.

"6.  Whether the steers in question were in good condition
when delivered to the defendant company at Kansas City, Mis-
souri, you will determine from the evidence in the case.  In
arriving at this determination, it will be proper for you to con-
sider their condition when purchased by the plaintiff, and while
in the possession of the commission company through which
plaintiff purchased them, and just prior to their delivery to the
defendant company for shipment.  From this evidence and all
other evidence in the case and bearing upon the question, you
will determine as to the condition of said steers when delivered
to the defendant company for shipment."

Appellant makes no complaint of these.  Plaintiff introduced
no witness who saw the cattle loaded, or who saw their condi-
tion at that precise time.  Plaintiff examined them carefully,

and saw them last at about 5 o'clock P. M. of February 1st, and they were then in healthy condition, with no bruises or lameness. It does not appear at just what time of day or evening they were loaded, but the freight bill is dated February 1st, at Kansas City, and they were received at Fairfield, February 2d. Considering these dates, and the distance from Kansas City to Fairfield, the jury may well have found that the cattle were loaded soon after 5 o'clock on the first. When plaintiff last saw the cattle at Kansas City, they were in possession of the Kansas City Stock Yards Company. He did not see them again until they arrived at Fairfield, nor did any witness for plaintiff see them from that time until they arrived at Fairfield.

Plaintiff testifies that he is a farmer, and has been buying and selling cattle for more than 20 years. During the day of February 1, 1916, he bought 133 head of cattle at Kansas City, in different bunches. They were stock cattle,—native cattle; would average about 600 pounds each. When he saw the cattle at Kansas City, there were 42 in one bunch, and 91 in the other. The 42 are not in controversy in this case. The 91 head were ordered loaded in two cars at Kansas City. Of the 91 head, 46 arrived in good condition at Fairfield, and they are not in controversy. When the others arrived at Fairfield, they were in two cars, about 30 in one and 14 or 15 in the other. All 4 cars arrived at Fairfield in the same train. At that time, one of the 45 was missing, and there were two dead animals. Some of the others were lame and bruised. One steer had a horn knocked off; bleeding down one side of his head. The trial court directed the jury to disregard plaintiff's claim entirely as to the missing steer. Defendant's agent testifies, from the waybill, as we understand it, that the 45 head had been split up at Princeton, Missouri, and into two cars; that the damaged cattle came from Kansas City to Princeton in one car, and from Princeton to Fairfield in two cars. Doesn't show whether one steer was taken out at Princeton; shows one steer dead at Princeton. The waybill does not show the number of head in a car; shows the weights, but not the number. There was bedding in the car containing the 46 head that came through in good condition. In the other two cars containing the injured and dead cattle; the bedding was crowded to the edges of the car in one, so that

the car floor was bare. The other car had manure and stuff in it, but did not have any soft, what would be called bedding.

Plaintiff testifies that he has purchased a good many cattle at Kansas City, and is acquainted with the manner of loading cars of cattle at that place. He says he knows that the railway employees do the loading; that he was acquainted with the custom of loading cattle there at that time; that, after the cattle are weighed on the scales, the stockyard company takes possession of them and puts them in lots, until they are billed out,— herded out; that they deliver them to the railroad chutes, and the railroad takes them from there. Plaintiff says that he has no control over the cattle loading—over the actual loading; that he has been down to the stockyards, and has been ordered out. Plaintiff is corroborated as to some of these matters, in regard to the custom of loading and so on, and as to the value of the cattle, by his brother. Their evidence is undisputed. Under the circumstances shown, the jury might properly have inferred continued good condition, from the time the plaintiff last saw them until they were loaded. It is not likely that the appellant would receive and accept for shipment a dead steer, along with a car of live ones, or that they would accept injured cattle, at least without some notation. The fact that the dead and injured animals arrived at Fairfield in two cars, when they had been shipped in one, is of some significance, in connection with all the other circumstances, as indicating that the animals may have been injured in a wreck or collision of some kind. There is no direct evidence, of course, that such is the fact, but this was a matter within the knowledge of the company, and one of which plaintiff could have no knowledge. From all the evidence and the circumstances, we think it was a question for the jury as to whether the cattle were in good condition at the time they were loaded, and that the verdict of the jury that they were in such condition has sufficient support in the testimony.

2. On the question of value of the injured animals, plaintiff and his brother were asked what, in their judgment, would have been the value at Fairfield, if delivered in good condition.

2. EVIDENCE: opinion evidence: value in "good" condition. Complaint is made of the use of the word "good," and that the witnesses were permitted to give their opinion of what good condition

might consist of, as well as their opinion as to the value. The witnesses were farmers, and proper foundation had been laid as to their competency to speak as to values, and to show that they were experienced cattle men. Used as it was, the word "good" would be readily understood. Clearly, neither the witness nor the jury could have understood anything else than that what was meant by good condition was sound condition, or uninjured condition. 20 Cyc. 1256; *McNabb v. Juergens*, decided Dec. 15, 1921. In this connection, the additional ground was urged as to the testimony of plaintiff's brother that he had never seen the cattle, prior to their being unloaded at Fairfield. He did see them there, however, and observed their size and other characteristics, and, being a farmer, was competent to speak as to their value, had they not been injured. An animal or article may be so described to a witness as to permit him to judge of its condition or value, even though he had never seen it at all.

3. Plaintiff's claim was made out by defendant's agent, at Fairfield, at plaintiff's request, March 4, 1916. It was filled out on a standard form for presentation of loss and damage claims, and plaintiff signed it, after the agent had filled in the written part. The agent testifies that he generally hands the shipper the form when he comes in and tells him about the claim, and asks the agent to fix it up for him; that he has the shipper sign it, and then sends it in later. Wouldn't say whether that was what he did in this instance or not. Sometimes they do not have time to wait for him to fill it out, and he does it for them, and files the claim and sends it in. That happens occasionally. At any rate, the claim concededly was not filed in time with the receiver, under the order of court. The facts in this case are like those in *Anderson v. Chicago, R. I. & P. R. Co.*, 189 Iowa 739, and we think the point is ruled by that case.

*3. RECEIVERS: failure to file claims.*

4. Two or three instructions were offered by defendant, but the points were covered by the instructions given by the court. We discover no error, and the judgment is—*Affirmed.*

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.