**MAST v. ILLINOIS CENT. R. CO.**
Civil Action No. 410.

District Court, N. D. Iowa, E. D.
Aug. 9, 1948.

Burton E. Sweet and Oliver J. Reeve, both of Waverly, Iowa, for plaintiff.

Frank H. Helsell, of Fort Dodge, Iowa, and Leo J. Cohrt, of Waterloo, Iowa, for defendant.

GRAVEN, District Judge.

Motion for a new trial following a directed verdict for the defendant in a railroad crossing collision case involving the no eyewitness rule, last clear chance doctrine, and related matters.

On June 28, 1945, at a railroad crossing in the open country north of Cedar Falls, Iowa, at approximately 11:30 A.M., a col-

lision occurred between a truck owned and operated by Harry E. Mast and a train operated by the defendant, Illinois Central Railroad Company. Harry E. Mast died as the result of the injuries sustained in the collision. The plaintiff, Ruth Mast, widow of the decedent and executrix of his estate, brought this action under Sections 611.20 and 611.22, Code of Iowa 1946, providing for the bringing of actions by a representative of a deceased person. Clarence Mast and Wayne Mast, two minor sons of the decedent who were riding in the truck at the time of the collision, were injured as a result thereof, and brought separate actions to recover damages for such injuries. Their actions and the present action were consolidated for purposes of trial. At the conclusion of the entire case, the Court sustained the motion of the defendant for a directed verdict as to the claim of Harry E. Mast. The claims of the minor sons were submitted to the jury. The jury was unable to agree upon a verdict, being equally divided for and against their claims. Those actions are presently awaiting retrial. Subsequent to the directed verdict the plaintiff filed a motion for a new trial. This opinion has to do with that motion.

The site of the collision was about five and one-half miles north of Cedar Falls, Iowa, where a secondary country road intersected the railroad line of the defendant. The country road ran east and west and the railroad line ran in a general northwesterly-southeasterly direction at the crossing. The country road was of gravel and had the standard sixty-six foot right of way. The railroad line was of single track and had the standard one hundred foot right of way. The crossing was surfaced with crushed rock at that time, having little or no grade in the approaches thereto upon the road, and was in good condition. The terrain surrounding the crossing was also substantially level and there were no curves in either the road or the railroad line sufficiently close to the crossing to be of importance. A cross-arm warning signal was in position at the east side of the crossing at the side of the road. What is known as a whistling post stood approximately one thousand feet north of the crossing near the defendant's tracks.

The day in question was a still, warm summer day.

The farm home of the decedent, Harry E. Mast, and his family was situated immediately north of the road at the crossing and immediately adjacent to the east line of the railroad right of way, his western and southern property lines bordering respectively on the railroad and country road rights of way. Harry E. Mast had lived at that farm home for fourteen years prior to the collision and was manifestly familiar with the crossing and the conditions existing at the crossing. The evidence showed that Harry E. Mast had been making use of a portion of the easterly half of the right of way for one of his driveways. That driveway came out into the railroad right of way from the west side of his grove and continued on the east side of the railroad right of way to the crossing. Another driveway was located on the easterly side of the decedent's front yard which opened onto the country road in question. An engineer's plat introduced in evidence shows that from the center of the latter driveway at the point where it entered the country road to the center of the crossing where the collision occurred is approximately one hundred seventy-five feet.

On the forenoon in question, immediately preceding the collision, the evidence shows that Harry E. Mast left his farmstead by way of the driveway one hundred seventy-five feet from the crossing driving his 1940 Ford truck. The rear of the truck had been fitted with a lime box and spreader. There was a closed cab on the truck. In the doors on each side of the cab there were full width view windows extending for some distance down from the top. In the rear of the cab there was a rear view window extending across the greater portion of the cab. According to the testimony of Ruth Mast, it was the intention of the said Harry E. Mast to secure a load of gravel from a pit situated in a field west of his farm and across the track. Riding upon the truck in the lime box were his two minor sons, Clarence, at that time twelve years of age, and Wayne, at that time nine years of age. After entering the country road, Harry E. Mast turned his truck to the west and proceeded in that direction towards the cross-

ing in question. He approached the crossing at the same time that a train of the defendant was nearing the crossing from the north. The train was a so-called "extra train," consisting only of an engine and caboose. The evidence shows that the engine was of a type known as the Improved Mikado, having an overall height of fifteen feet, nine inches. The evidence tended to show that the truck driven by Mast hit the steam chest cover near the front of the engine. The truck was thrown by the impact to the south of the road and east of the track. The train crew stopped the train, returned to the crossing, and, after a conference with Mrs. Ruth Mast who had run to the scene of the collision from the house, took Harry E. Mast to a more southerly junction where an ambulance which had been called met the train and took him to a hospital in Cedar Falls, Iowa. He died the next morning. Clarence and Wayne Mast received injuries from which they both made fairly prompt and satisfactory recovery, except as to probable continued nervousness on the part of Wayne Mast.

Upon the Mast farmstead, between the farm buildings and the west property line, was a grove of trees which commenced some distance to the southwest of the farm house. The first tree of the grove was situated in the yard approximately sixty-five feet north of the road and was close to the railroad right of way fence. Approximately ninety feet north of the road, near or on the easterly line of the railroad right of way, there was situated a fairly large tree. A large branch of that tree extended into the right of way approximately eleven or twelve feet. The wires of the fence separating the farm of Harry E. Mast and the right of way ran on the west side of the tree. Shortly beyond this tree to the north near the easterly right of way line was a clump of berry bushes and beyond that was a clump of plum brush. Witnesses called by the plaintiff estimated the height of the bushes and brush to be from six to sixteen feet.

The plaintiff, Ruth Mast, testified that she was familiar with the conditions existing at the crossing at the time of the collision. According to her description, extend-

ing north along the track for a distance of four hundred to five hundred feet, there were weeds from five to seven feet tall at the time of the collision. A brother of Harry E. Mast, called as a witness by the plaintiff, testified that, starting about fifteen feet north of the north line of the country road and extending north along the track, there were weeds from five to eight feet high. Two other witnesses called by the plaintiff testified that the weeds in question were up to six feet in height. Another witness called by the plaintiff testified that the weeds in question were from three to four feet in height. Another witness called by the plaintiff testified that the weeds in question were about three feet in height. Witnesses called by the plaintiff testified that, running along each side of the track to the north of the crossing, there was a mound or ridge of earth from three to five feet in height and that such mound or ridge was about seven feet east of the track. The driveway of Harry E. Mast on the railroad right of way, heretofore referred to, was about midway between the tracks and the east line of the railroad right of way. The mound or ridge referred to was between that driveway and the tracks. Witnesses called by the plaintiff testified that it was the presence of the weeds on that mound or ridge which gave rise to serious view obstruction in so far as weeds were concerned. It is the claim of the plaintiff that following the collision there was considerable trampling of the weeds in question. Numerous witnesses called by the plaintiff testified as to the extent to which the visibility of the railroad track to the north of the crossing was diminished because of the obstructions heretofore described. The plaintiff, Ruth Mast, testified that she traveled back and forth across the crossing in question several times a week at or around the time of the collision. She testified that at a point on the road one hundred fifty feet east of the crossing the view to the north was totally obstructed; that at a point one hundred feet east of the crossing one could see up the tracks to the north from thirty to forty feet; and that at a distance of twenty feet from the crossing one could see up the tracks to the north from seventy to seventy-five feet. A broth-

er of the decedent who was presented as a witness for the plaintiff testified that at a point on the road about one hundred sixty-five feet east of the crossing a view could be had up the tracks to a point about ten feet north of the north right of way line of the highway; that at a point twenty-five feet from the east rail of the crossing one could see up the track for a distance of one hundred feet. He further testified that at a point twenty-five feet from the east rail one could see over the weeds to the north up the track "for a considerable distance." The substance of the testimony of the other witness called by the plaintiff was in accord with the testimony given by the plaintiff and by the brother of the decedent as to features of visibility to the north of the crossing.

The plaintiff, Ruth Mast, testified that she was in the farmhouse at the time her husband and their two sons left the farm in the truck. She testified that soon after they left she caught a flashing glimpse of a train from a window in the house through a break in the foliage of the trees around the farm. She estimated the point where she could see through this break was approximately six hundred feet north of the crossing. She testified that soon thereafter she heard a crash, but that at no time between catching the glimpse of the passing train and hearing the crash did she hear any warning bell or whistle. Neighboring farmers called by the plaintiff testified that they were sufficiently close to the scene of the collision that forenoon to have heard the ringing of the bell and the sounding of a whistle on the locomotive in question as it approached the crossing. They testified that the bell on the locomotive was not rung or the whistle sounded as the train approached the crossing.

Witnesses called by the plaintiff testified as to the distance in which the train stopped following the collision. Their estimates ranged from six hundred feet up to one-half mile. A neighboring farmer who stated that he lived between one-quarter to one-half mile from the crossing to the west testified that from this point he watched the train approach the crossing but that his view of the train's traverse of the crossing was cut off by buildings between him and the crossing. He estimated the speed of the train as being between fifty and sixty miles an hour. Apart from the evidence bearing upon the extent of damage to the decedent's estate, the evidence of the plaintiff related largely to three matters: (1) To lack of statutory warning of the approach of the train to the crossing, (2) to the high speed of the train, and (3) the obstruction to the view. The evidence of the defendant strongly contradicted the evidence of the plaintiff as to these matters. An engineer in the employ of the defendant who made a survey of the area two days after the collision testified that at a point forty feet east of the center of the railroad in the center of the road one had a view up the track for at least one-half mile; that at a point fifty feet east of the crossing in the center of the road the view up the track decreased to six hundred fifty feet because of the trees and brush; that at seventy feet the view was three hundred feet; that at a point one hundred feet east of the crossing the view was two hundred feet. Two days after the collision the defendant had an engine of the same type as the one involved in the collision approach the crossing while a photographer on the road took photographs at various points of the approach. The photographer was called as a witness by the defendant. His testimony and the photographs introduced into evidence and taken by him tended to show that at a point seventy-five feet east of the crossing the engine became fully visible at a point two hundred fifty feet north of the crossing. Members of the train crew testified that the bell was rung continuously and the whistle sounded at the required distance as the train approached the crossing. Members of the train crew testified that the speed of the train as it approached the crossing was around thirty to thirty-five miles an hour and that the train was brought to a stop within a distance of two hundred fifty to four hundred feet.

The engineer who made a survey of the area after the collision testified that there was then no ridge or mound east of the east rail higher than the rail level for a distance of three hundred feet north of the road. He further testified that there had been no

leveling done between the time of the collision and the time of the survey. The defendant introduced into evidence certain photographs taken two days after the collision by a photographer employed by it. It is the claim of the defendant that these photographs negative the existence of a mound or ridge of the kind testified to by witnesses called by the plaintiff. The defendant also claims that these photographs show that there had been no disturbance of the sod or soil in the area of the claimed mound or ridge. It is also the claim of the defendant that those photographs negative the presence of any view-obstructing weeds or of any trampled weeds. The plaintiff, in her main case, introduced certain photographs taken by an Iowa State Patrolman about two hours after the collision. It is the claim of the defendant that those photographs negative the presence of any view-obstructing weeds and trampled weeds.

As the train approached the crossing, the right hand or engineer's side of the locomotive cab was to the west, and the left or fireman's side of that cab was to the east. The fireman's seat was hence on the side from which the Mast truck approached the crossing. Earl J. Keith, the fireman on the train, was called with the rest of the train crew to testify in behalf of the defendant. He testified that as the train approached the crossing he was seated in the fireman's seat. He testified that he first saw the Mast truck when the train was between two hundred and two hundred fifty feet north of the crossing; that he first saw the Mast truck when the truck was from one hundred to one hundred twenty-five feet east of the crossing; that he observed the truck from that point as it approached the crossing until immediately before the instant of impact and that as the truck approached the crossing he could see Harry E. Mast's body from his shoulders down to the seat of the truck. According to his testimony the truck approached the crossing at a speed of from fifteen to twenty miles an hour, there was no perceptible change in the speed or movement or course of the truck, and the truck proceeded without any slackening of speed or hesitation directly into the path of the oncoming engine with no apparent recognition of its approach on the part of the driver. He stated that he saw no movement on the part of the driver of the truck as the truck approached the crossing. He further testified that he did not call out or give any other warning to the engineer as to the situation until the truck was approximately fifteen feet away from the crossing and the train was approximately thirty feet away from the crossing. At that point, he stated, he "hollered" to the engineer and that the engineer immediately applied the emergency brakes on the engine and brought the train to a stop within a distance of from three hundred to three hundred seventy-five feet. The fireman also testified that he saw the two boys riding in the box of the truck; that they were each riding with a hand upon the top of the cab of the truck and facing substantially in the direction in which the truck was moving; and that they also showed no apparent sign of recognition of the danger of the approaching engine.

The present case was commenced in the District Court of Iowa in and for Bremer County and removed to this Court. In her complaint, the plaintiff, after describing the circumstances of the collision and the conditions under which it took place, pleaded the freedom of Harry E. Mast from contributory negligence and made the following specifications of negligence on the part of the defendant:

"1. In operating the train and locomotive at a dangerous, excessive and high rate of speed.

"2. In failing to blow the whistle and ring the bell, or give any signal of the train or locomotive approach to said crossing as provided in Section 478.19 of the 1946 Code of Iowa, so as to warn the said Harry E. Mast or anyone using the same.

"3. In allowing the high bank or mound of dirt, grass, weeds, brush, shrubbery and trees and other obstructions to the north and in the vicinity of the crossing to remain so as to obstruct the view of the said Harry Mast at the time he was struck and killed while using said crossing.

158

"4. In failing to have a competent and skilled engineer or conductor in charge of said train and locomotive.

"5. In approaching and traversing said crossing at a dangerous and excessive rate of speed knowing that said crossing was obscured and dangerous and that persons approaching said crossing from the East could not see said train or locomotive approaching from the North.

"6. In failing to use reasonable and proper care to discover the peril of the said Harry E. Mast in time to prevent the collision.

"7. In failing to keep a proper look out for persons and vehicles approaching and using said crossing.

"8. In failing to have said train and locomotive under proper control.

"9. In failing to keep a proper watch and lookout to see that said crossing was clear as said train and locomotive was about to pass over it and in failing to reduce the speed of said locomotive or to stop said train or locomotive or to use reasonable care in avoiding the collision when the engineer, conductor or other employees, saw, or in the exercise of reasonable care, ought to have seen that a traveler on the highway was approaching and about to use said crossing and that a collision was threatened.

"10. In failing to take any steps to remove said obstructions at said crossing and upon its right of way and in knowingly permitting obstructions such as said mound of dirt, weed, brush, shrubbery, and trees to exist and grow thereon so as to obstruct the view of persons approaching and traversing said crossing."

The only one of the specifications of negligence charging a violation of a statutory duty is Specification No. 2 relating to the ringing of the bell and sounding of the whistle upon a locomotive approaching a crossing. Section 478.19 Code of Iowa 1946 provides in part as follows:

"A bell and a steam whistle shall be placed on each locomotive engine operated on any railway, which whistle shall be twice sharply sounded at least sixty rods before a road crossing is reached, and after the sounding of the whistle the bell shall be rung continuously until the crossing is passed; * * * and the company shall be liable for all damages which shall be sustained by any person by reason of such neglect."

In the present case there was ample evidence upon which to submit to the jury the question of the negligence of the defendant under this specification.

It is well-settled Iowa law that the statutory provisions relating to the duties of railroad companies at crossings represent only the minimum requirements. Lindquist v. Des Moines Union R. Co., Iowa 1947, 30 N.W.2d 120, 122. The conditions and circumstances existing at a railroad crossing may render its use so hazardous as to require precautions not required by statute. Wiese v. Chicago Great Western R. Co., 1918, 182 Iowa 508, 166 N.W. 66; Lindquist v. Des Moines Union R. Co., supra.

Plaintiff's specifications of negligence No. 1 and No. 5 allege speed as an independent ground of negligence. Plaintiff's specifications of negligence No. 3 and No. 10 allege the presence of weeds, brush, and trees as an independent ground of negligence. Under the Iowa law no particular rate of speed in the open country is in itself negligence or an independent ground of negligence. Wiese v. Chicago Great Western R. Co., 1918, 182 Iowa 508, 166 N.W. 66; Hartman v. Chicago Great Western R. Co., 1906, 132 Iowa 582, 110 N.W. 10, 11. Neither under the Iowa law is the presence of weeds or view-obstructing growth considered an independent ground of negligence. Sterlane v. Fleming, 1945, 236 Iowa 480, 18 N.W.2d 159. However, speed and the presence of weeds, brush, and trees may be considered along with other matters in determining whether the railroad company had exercised reasonable care at a certain crossing under the conditions and circumstances then existing. Sterlane v. Fleming, supra. Plaintiff's specification of negligence No. 4 alleges the failure of the defendant to have a competent and skilled engineer or conductor in charge of the train and locomotive. There was not sufficient evidence to submit to the jury the question of negli-

gence of the defendant under this specification. Plaintiff's specification of negligence No. 8 relates to the failure of the defendant to have the train and locomotive under control. The evidence as to lack of control related only to the matter of the distance the train was stopped following the collision. Therefore, this specification as to control would seem to be a part of the speed specification and have the same status as that specification. Plaintiff's specification No. 7 alleged failure to keep a proper lookout for persons approaching and using the crossing. This specification will be referred to later in connection with the rule of last clear chance. Under plaintiff's specifications Nos. 6 and 9, she invokes the rule of last clear chance.

The problem of the plaintiff in the present case has not been that of making a submissible issue to the jury as to the negligence of the defendant. Her problem has been occasioned by the Iowa law relating to contributory negligence. She has sought to meet that problem on the one hand by what might be termed neutralization of negligence on the part of the decedent by the application of the rule of last clear chance, and, on the other hand by establishing freedom from contributory negligence on the part of the decedent by means of the no eyewitness rule. The general Iowa rule is that contributory negligence on the part of the injured person is a complete bar to recovery. For exceptions not here involved, see Rule 97, Iowa Rules of Civil Procedure, p. 2154, Vol. II Code of Iowa 1946, and Section 479.124, Code of Iowa 1946. The Iowa Supreme Court in the cases of Yance v. Hoskins, 1938, 225 Iowa 1108, 281 N.W. 489, 118 A.L.R. 1186, and Hoegh v. See, 1933, 215 Iowa 733, 246 N.W. 787, set forth a model instruction which states the Iowa rule very clearly. That instruction in part is as follows: " * * * before the plaintiff can recover, he must show that he did not, by any negligence or want of ordinary care on his part, in any way on in any degree, contribute directly to the injuries of which he complains." [225 Iowa 1108, 281 N.W. 494] Accord. Anderson v. Holsteen, Iowa 1947, 26 N.W.2d 855; Smith v. Pine, 1943,

234 Iowa 256, 12 N.W.2d 236. The word "directly" is an essential part of the instruction. Engle v. Ungles, 1937, 223 Iowa 780, 273 N.W. 879, 883.

On the issue of the negligence of the defendant the plaintiff must establish by the greater weight or preponderance of the evidence that the negligence of the defendant was the proximate cause of the injuries complained of. Burwell v. Siddens, Iowa 1947, 25 N.W.2d 864, 865. See, also, Kemp .v. Creston Transfer Co., D.C. Iowa 1947, 70 F.Supp. 521, 525, 526. However, in order to defeat recovery, the negligence of the plaintiff need not be the "proximate" cause of the injuries and it is reversible error so to instruct a jury. Meggers v. Kinley, 1936, 221 Iowa 383, 265 N.W. 614; Hamilton v. Boyd, 1934, 218 Iowa 885, 256 N.W. 290; Towberman v. Des Moines City R. Co., 1927, 202 Iowa 1299, 211 N.W. 854. Accord. Anderson v. Holsteen, Iowa 1947, 26 N.W.2d 855; Hellberg v. Lund, 1933, 217 Iowa 1, 250 N.W. 192. See, also, Stilson v. Ellis, 1929, 208 Iowa 1157, 225 N.W. 346, where an instruction using the words "directly or proximately contributes" was held not to be erroneous. Negligence on the part of the injured person which will defeat recovery need only be a contributory cause and not a proximate cause. Hogan v. Nesbit, 1933, 216 Iowa 75, 246 N.W. 270, 272; Hellberg v. Lund, 1933, 217 Iowa 1, 250 N.W. 192. The earlier Iowa cases did not make this distinction. See Spencer v. Illinois Cent. R. Co., 1870, 29 Iowa 55, 58. Trial courts on occasion have experienced some difficulty in making it clear to jurors the distinction between conduct which "directly or proximately" contributes or contributed in "any manner or in any degree directly" on the one hand, and conduct which is the "proximate cause" of the injuries on the other.

The Federal Courts in actions where jurisdiction is based upon diversity of citizenship follow the applicable state law as to the rule of last clear chance. Pearman v. Crain, 8 Cir., 1948, 166 F.2d 109, 113; Middleton v. Norfolk & W. Ry. Co., 4 Cir., 1948, 165 F.2d 907, 908. In the present case the Iowa law relating to the

rule of last clear chance is applicable. The Iowa rule as to last clear chance has been the subject of thorough and excellent discussion. Iowa Applications of The Last Clear Doctrine, by Herbert F. Goodrich, 5 Iowa Law Bulletin 36-56; Pleading Negligence in Iowa, by Forest L. Bedell, 16 Iowa Law Review 480, 488, 490; Note 2 Iowa Law Bulletin 122–126; Note 5 Iowa Law Bulletin 276, 277. In the annotations to the cases of Harris Motor Lines, Inc., v. Green, 1946, 184 Va. 984, 37 S.E.2d 4, 171 A.L.R. 359; Caplan v. Arndt, 1938, 123 Conn. 585, 196 A. 631, 119 A.L.R., 1037, 1041 and Smith v. Gould, 1931, 110 W. Va. 579, 159 S.E. 53, 92 A.L.R. 28, there are set forth the authorities from the different jurisdictions including Iowa on the doctrine of last clear chance. The Iowa rule varies in some particulars from the rule in other jurisdictions. The Iowa rule varies in some particulars from the rule as stated in Restatement Torts-Negligence, Secs. 479, 480. The Iowa rule, as does the rule in other states, permits an injured person to recover for injuries notwithstanding his negligent conduct. Obviously an injured person who has not been negligent has no need of the rule.

▮▮▮ The rule of last clear chance was first adopted in Iowa in the case of Cooper v. Central Ry. of Iowa, 1876, 44 Iowa 134, 138. The Iowa Supreme Court has dealt with or discussed different phases of that rule in a large number of subsequent cases. The Iowa rule presupposes that negligent conduct on the part of the person injured has placed him in a position of peril. Lynch v. Des Moines R. Co., 1932, 215 Iowa 1119, 245 N.W. 219; Clemens v. Chicago R. I. & P. R. Co., 1913, 163 Iowa 499, 144 N.W. 354; Wilson v. Illinois Cent. R. Co., 1911, 150 Iowa 33, 129 N.W. 340, 344, 34 L.R.A., N.S., 687. The burden of establishing all of the facts necessary to bring a party within the scope of the rule is upon the party invoking the rule. Nagel v. Bretthauer, 1941, 230 Iowa 707, 298 N.W. 852, 854; Rutherford v. Gilchrist, 1934, 218 Iowa 1169, 255 N.W. 516. See, also, 159 A.L.R. 725. A plaintiff cannot invoke the rule without pleading facts showing that the rule is applicable. Falt v. Krug, Iowa 1948, 32 N.W.2d 781; Steele v. Brada,

1931, 213 Iowa 708, 239 N.W. 538, 540; Phelan v. Foutz, 1925, 200 Iowa 267, 204 N.W. 240. See, also, Cook, Iowa Rules of Civil Procedure Annotated, p. 216. In the present case the plaintiff did plead last clear chance and claim the benefit of that rule. The Iowa rule is a rule applicable in cases of discovered peril. It is an essential element of the rule that the defendant must have actually seen and had actual knowledge of the position of the person injured. Nagel v. Bretthauer, 1941, 230 Iowa 707, 298 N.W. 852; Groves v. Webster City, 1936, 222 Iowa 849, 270 N.W. 329; Rutherford v. Gilchrist, 1934, 218 Iowa 1169, 255 N.W. 516, 519; Graves v. Chicago R. I. & P. R. Co., 1928, 207 Iowa 30, 222 N.W. 344; Stanoshek v. Chicago R. I. & P. R. Co., 1924, 198 Iowa 62, 199 N.W. 310, 312; Miller & Kizer v. Des Moines City R. Co., 1923, 196 Iowa 1033, 196 N.W. 600, 602; Carr v. Interurban R. Co., 1919, 185 Iowa 872, 171 N.W. 167, 168. In a case involving the rule of last clear chance, it is reversible error to instruct the jury that the rule is applicable if the defendant by "the exercise of reasonable care could have seen the person in question." Carr v. Interurban R. Co., 1919, 185 Iowa 872, 171 N.W. 167. It is also an essential element of the rule that danger to the person in question was reasonably to be perceived from his then position. Winegardner v. Manny, 1946, 237 Iowa 412, 21 N.W.2d 209. See, also, Morbey v. Chicago & N. W. R. Co., 1902, 116 Iowa 84, 89 N.W. 105. In the case of Winegardner v. Manny, supra, the Iowa Supreme Court states at page 211 of 21 N.W.2d: "It is sufficient if peril was so imminent that to a person of ordinary prudence the infliction of injury would seem probable if proper effort were not made to avoid it." The cases cited in connection with the two elements of the rule just referred to are to the effect that the other party must have actual knowledge of the presence of the injured person and have actual knowledge of such other facts in connection therewith as would suggest to a person of ordinary prudence that the injured person was in a position of peril. The testimony of the person in charge of an engine or other instrumentality that he did not actually see the person in question is

not conclusive and the facts and circumstances may be such as to make the matter of actual discovery a question for the jury. Gearhart v. Des Moines Ry. Co., 1946, 237 Iowa 213, 21 N.W.2d 569, 573; Gregory v. Wabash R. Co., 1904, 126 Iowa 230, 101 N.W. 761, 763; Farrell v. Chicago R. I. & P. R. Co., 1904, 123 Iowa 690, 99 N.W. 578; Barry v. Burlington Ry. & Light Co., 1903, 119 Iowa 62, 93 N.W. 68, 69, 95 N.W. 229; Johnson v. Chicago M. St. P. R. Co., 1901, 122 Iowa 556, 98 N.W. 312, 313. Another necessary element of the rule is that after the injured person was discovered in a position of peril the other party by the exercise of reasonable care could have avoided injuring him. Steele v. Brada, 1931, 213 Iowa 708, 239 N.W. 538; Ryan v. Trenkle, 1924, 199 Iowa 636, 200 N.W. 318. In other words, the other party must have "time to be negligent." Ryan v. Trenkle, supra. The time element is of vital importance. Steele v. Brada, 1931, 213 Iowa 708, 239 N.W. 538, 540. In some of the Iowa cases the rule of last clear chance is regarded as an exception to the rule that contributory negligence bars recovery. Lynch v. Des Moines R. Co., 1932, 215 Iowa 1119, 245 N.W. 219, 222; Keefe v. Chicago & N. W. R. Co., 1899, 92 Iowa 182, 60 N.W. 503, 54 Am.St.Rep. 542; see, also, McCormick v. Ottumwa Ry. & Light Co., 1910, 146 Iowa 119, 124 N.W. 889. Steele v. Brada, 1931, 213 Iowa 708, 239 N.W. 538, 539; Bourrett v. Chicago & N. W. R. Co., 1911, 152 Iowa 579, 132 N.W. 973, 975, 36 L.R.A.,N.S., 957. However, in Groves v. Webster City, 1936, 222 Iowa 849, 270 N.W. 329, at page 332, the Iowa Supreme Court states: "The doctrine of last clear chance refers to 'negligence after negligence. The theory of it is that the later or last negligence becomes the proximate cause.'" In the case of Albrecht v. Berry, 1926, 202 Iowa 250, 208 N.W. 205, the Iowa Supreme Court makes a similar statement. As heretofore noted, it is the general Iowa rule that it is not sufficient for a plaintiff to establish that the negligence of the defendant was the proximate cause of his injuries but he must in addition establish that his own conduct was not a contributory cause. Under the "cause" theory of last clear chance stated in the cases of Groves v. Webster City, supra, and Albrecht v. Berry, supra, the negligence of the injured party is apparently negatived and neutralized on the ground of remoteness. Where the negligence of the injured person is continuing in character, the "cause" theory occasions some difficulty. The pronouncements of the Iowa Supreme Court as to the applicability of the rule where the negligence of the injured person is of a continuing character are not harmonious. In the case of Bruggeman v. Illinois Cent. R. Co., 1909, 147 Iowa 187, 123 N.W. 1007, Ann.Cas.1912B, 876, on page 1013 N.W. of 123 N.W., the Iowa Supreme Court stated: "It is not true that a plaintiff cannot rely upon the doctrine if his negligence continued down to the very instant of the collision." The foregoing statement is quoted in the fairly recent case of Groves v. Webster City, 1936, 222 Iowa 849, 270 N.W. 329. However, in the case of Clemens v. Chicago R. I. & P. R. Co., 1913, 163 Iowa 499, 144 N.W. 354, at page 355, the Iowa Supreme Court in referring to the doctrine of last clear chance stated: "This doctrine presupposes that the plaintiff's negligence was not active, continuing, and concurring negligence, continuing up to the very time of the accident, and concurring therein, but was remote and antecedent." If the negligence of the party injured continues up to the time of injury, it would seem somewhat difficult to eliminate such negligence on the ground of remoteness by means of a "proximate cause" theory. In the article on Iowa Applications of the Last Clear Chance Doctrine, by Herbert F. Goodrich, 5 Iowa Law Bulletin 36, on page 38, the author states that some of the Iowa cases in which recovery has been allowed under the last clear chance doctrine are difficult to explain under the "proximate cause" theory. The author states that it would be preferable to recognize and regard the rule of last clear chance as an exception to the Iowa rule that contributory negligence on the part of the injured person bars recovery. However, whatever may be the situation as to the theory of the rule, it seems that the Iowa Supreme Court apparently still recognizes the right of injured persons whose negligence continues up to the in-

stant of the collision to have the benefit of the rule. Therefore, the plaintiff in the present case is not upon that ground to be denied the benefit of the rule. There are some additional phases of the law applicable to last clear chance which should be considered. In 1939 the Iowa Supreme Court, in the case of Reynolds v. Aller, 1939, 226 Iowa 642, 284 N.W. 825, laid down a rule of considerable importance in connection with the last clear chance rule. In Iowa in actions for the recovery of damages for personal injuries claimed to have been occasioned by the negligence of a defendant in the operation of a moving instrumentality, one of the very frequent specifications of negligence is that of failure to keep a proper lookout. In the case of Reynolds v. Aller, supra, the plaintiff sued to recover for personal injuries claimed to have been sustained by him by reason of the defendant's negligence in the operation of a motor vehicle. One of the plaintiff's specifications of negligence was that the defendant failed to keep a proper lookout. The plaintiff in the same pleading invoked the doctrine of the last clear chance. The Iowa Court held that a specification of failure to keep a proper lookout negatived the application of the rule of the last clear chance. That Court stated, 284 N.W. at page 828: "* * * one of the specifications of negligence alleged by plaintiff, and at no time withdrawn, was that the defendant driver was guilty of negligence in not keeping a proper lookout. An allegation binds the one who makes it * * *." The Court then held that the plaintiff having alleged that the defendant was not keeping a proper lookout, could not, in order to get the benefit of the rule of the last clear chance, prove that the defendant actually saw him in time to prevent the injury. In the present case, the plaintiff in specification No. 7 specified that the defendant was guilty of negligence in "failing to keep a proper lookout for persons and vehicles approaching and using said crossing." In specification No. 9 the plaintiff in invoking the last clear chance rule alleged that the "engineer, conductor, or other employees, saw, or in the exercise of reasonable care ought to have seen, that a traveller on the highway was approaching and about to use

said crossing and that a collision was threatened." As heretofore noted, it is not a sufficient basis for the application of the last clear chance rule that the party in question in the exercise of reasonable care ought to have seen Harry E. Mast. Harry E. Mast must actually have been seen. Therefore, in the present case, the reliance of the plaintiff on the rule of last clear chance must rest upon her allegation that an employee or employees of the defendant actually saw Harry E. Mast approaching the crossing in question.

It is to be noted that in specification No. 9 the failure to keep a proper lookout and last clear chance are pleaded in the alternative. In specification No. 6 failure to keep proper lookout is pleaded but not in the alternative. The Iowa Supreme Court has not passed upon the question as to whether a party may avoid the rule in the case of Reynolds v. Aller, supra, by pleading failure to keep proper lookout and last clear chance in the alternative in the same count or paragraph.

In paragraph III of the plaintiff's complaint it is alleged that the view up the railroad tracks from the crossing was so obscured by weeds, brush, and trees that Harry E. Mast, as he approached the crossing, could not see an approaching train until he was within a few feet of the tracks at the crossing. In a later portion of the complaint, the applicability of the rule of last clear chance is pleaded and the applicability of that rule is claimed by the plaintiff under the record. Thus in effect, the plaintiff is asserting that the view of the crossing was so obstructed that Harry E. Mast could not see the train in time to avoid the collision, but on the other hand the situation was such that the fireman on the locomotive could see the Mast truck at such a distance away from the crossing that the train could have been stopped before Harry E. Mast reached the crossing. Presumably in a railroad crossing collision case when a party in a locomotive is able to see the other vehicle the party in the vehicle should at least be able to see the locomotive. See language to this effect in Moore v. Keokuk & W. R. Co., 1893, 89 Iowa 223, 56 N.W. 430, 432. It would seem under the rule announced in the case of Reynolds v.

Aller, supra, that there might be some question as to whether the allegation as to the obstructed view did not negative the application of the last clear chance or that the allegation as to last clear chance did not negative the allegation as to obstructed view.

Had this case been tried in the Iowa District Court where it was originally commenced, that court presumably would have held that under the case of Reynolds v. Aller, supra, the plaintiff by pleading failure to keep a proper lookout as one of her specifications of negligence had negatived her right to invoke the doctrine of last clear chance. Such court might further have held that her pleading as to obstructed view negatived last clear chance, or vice versa. The question as to whether or not a federal court in a case where jurisdiction is based upon diversity of citizenship should give the same force and effect to allegations in the pleadings as would be given such allegations in the local state court is one not free from difficulty. Because of another phase of the case, it is apparently not necessary now to determine that question. As to other phases of Iowa law relating to the pleading of last clear chance, see Pettijohn v. Weede, 1936, 219 Iowa 465, 258 N.W. 72.

█ The plaintiff's claim as to the applicability of the last clear chance under the evidence is based upon the testimony of the fireman that he first saw the Mast truck on the highway when the locomotive was north of the crossing a distance of from 200 to 250 feet and upon the testimony of one of the members of the train crew that the train was stopped within a distance of 250 to 300 feet after the collision. It was the testimony of the fireman that he first saw the Mast truck on the highway when it was from 100 to 125 feet from the crossing and that it was proceeding towards the crossing at a speed of from 15 to 20 miles an hour. It is the claim of the plaintiff that had the fireman, when he first saw the truck, signalled to the engineer to stop the train the collision could have been averted. It is the law of Iowa that those in charge of the operation of a train have the right to assume that a motorist approaching a railroad crossing will stop in a zone of safety, and that he will not drive into the zone of danger of a crossing when the train is approaching. Williams v. Mason City & Ft. D. R. Co., 1927, 205 Iowa 446, 453, 214 N.W. 692, 695. The rule is similarly stated in an Eighth Circuit Court of Appeals case where the Minnesota law was applicable. Roth v. Swanson, 8 Cir., 1944, 145 F.2d 262. In the Williams case, supra, the Iowa Supreme Court stated, 214 N.W. at page 695: "Travelers in motor vehicles frequently and customarily drive toward an oncoming train and stop just before going upon the tracks in order to permit the train to proceed on its way. There is in such conduct, however, no 'peril' until such wayfarer fails to stop in a zone of safety. Those in charge of the train have a right to assume that he will not drive into danger."

██ It is also Iowa law that those in charge of a train are under no duty to stop or to slow down a train merely because a motorist is approaching a crossing, such duty arising only when it becomes manifest that the motorist is going to drive on the tracks ahead of the train. Arp v. Illinois Cent. R. Co., 1941, 230 Iowa 869, 299 N.W. 413. Under the Iowa law a plaintiff seeking to recover for injuries sustained by a motorist at a railroad crossing under the rule of last clear chance must establish that those in charge of the train saw the perilous situation of the motorist in time to have avoided the collision. Hitchcock v. Iowa Southern Utilities Co., 1942, 233 Iowa 301, 6 N.W.2d 29, 35; Arp v. Illinois Cent. R. Co., 1941, 230 Iowa 869, 299 N.W. 413; Williams v. Mason City & Ft. D. Ry. Co., 1927, 205 Iowa 446, 214 N.W. 692. In order for the plaintiff to have the case submitted to the jury on the doctrine of last clear chance, there would have to be evidence from which the jury could find that the necessary elements of the rule had been established. Those elements were (1) actual discovery of Harry E. Mast on his approach to the crossing (2) actual knowledge of facts connected with that approach from which peril to Harry E. Mast could reasonably have been foreseen (3) sufficient time thereafter in which to avoid the collision by the exercise of ordinary care. The element as to actual discovery of Harry

164

E. Mast by the fireman is adequately supported by the testimony of the latter. The plaintiff's claim for support in the record for the other two elements is based upon the assumption that the fireman should have notified the engineer to stop the train when the train was 250 feet from the crossing and the Mast truck was from 100 to 125 feet from the crossing. Such assumption necessarily rests upon another assumption, and that assumption is that the negligence of Harry E. Mast in the operation of the truck was so manifest when the truck was first seen 100 to 125 feet proceeding at a speed of 15 to 20 miles an hour that it could reasonably have been foreseen that Harry E. Mast would drive the truck into the path of the engine. Under the Iowa law it seems clear that a fireman is under no duty to notify the engineer of the approach of a motor vehicle to a crossing until such time as it becomes apparent that the driver of the vehicle is not going to stop at that crossing and that a collision is imminent. It also seems clear under that law that a fireman who sees a motor vehicle at a distance of from 100 to 125 feet from a crossing travelling at a speed of from 15 to 20 miles an hour has the right to assume that a collision is not imminent until the motorist is reasonably close to the danger zone of the crossing tracks.

In the present case there is lacking evidence from which the jury could find that after the fireman saw that a collision was imminent the train could have been stopped or decelerated sufficiently in time to have avoided the collision. It is the holding of the Court that under the applicable decisions of the Iowa Supreme Court the plaintiff was not entitled to have the case submitted to the jury under the doctrine of last clear chance.

The plaintiff in the present case also claims the benefit of the Iowa no eyewitness rule. That rule is related to the Iowa rule as to contributory negligence. It is settled that in federal court cases where jurisdiction is based upon diversity of citizenship, where Iowa law is applicable, the Iowa rule as to contributory negligence is to be followed. Ft. Dodge Hotel Co. v. Bartelt, 8 Cir., 1941, 119 F.2d 253. It also seems clear that in such cases the Iowa law as to the no eyewitness rule is to be followed. Peterson v. Sheridan, 8 Cir., 1940, 115 F.2d 121. The no eyewitness rule is so closely related to the Iowa rule of contributory negligence that it is difficult to consider one without considering the other. It has been heretofore noted that one of the propositions that a plaintiff in an action such as this must establish is that the injured person was free from any negligence which contributed in any way or in any degree directly to those injuries.

Where the person injured in a collision is deceased and his representatives bring an action to recover for such injuries, such representative may by establishing certain required foundation facts have the benefit of the so-called no eyewitness rule. Under that rule such representatives are entitled to the presumption or inference that the deceased was exercising due care for his own safety at and prior to the collision. Where such representatives are unable to obtain direct evidence as to the conduct of the decedent, the matter of having the benefit of that presumption or inference is of vital importance to them on the matter of establishing the freedom from contributory negligence of their decedent.

The Iowa rule as to contributory negligence was established early in the history of the state. Donaldson v. Mississippi & M. R. Co., 1865, 18 Iowa 280, 87 Am.Dec. 391; Hanlon v. City of Keokuk, 1859, 7 Iowa 488, 74 Am.Dec. 276; Rusch v. City of Davenport, 1858, 6 Iowa 443. The Iowa rule originally seems to have been based primarily upon Lord Ellenborough's statement in the case of Butterfield v. Forrester, 11 East. 70. See Rusch v. City of Davenport, supra. Shortly thereafter the Iowa Supreme Court also adopted the no eyewitness rule. In the case of Ames v. Waterloo & C. F. Rapid Transit Co., 1903, 120 Iowa 640, 95 N.W. 161, at page 162, the Iowa Court in referring to the no eyewitness rule states: "The origin in this state of the rule that the presumption of action dictated by the instinct of self-preservation is due to the peculiar doctrine announced by this court in early cases that the burden of showing affirmatively freedom from con-

tributory negligence is on the plaintiff; and it was introduced in order to avoid the evident injustice of such a doctrine in cases where there was no evidence whatever one way or the other as to the exercise of care by the injured party, and no such evidence was attainable by reason of the death of the party injured, and absence of any proof as to the circumstances attending the injury."

The no eyewitness rule in general is founded upon the commonly recognized natural instinct of human beings to preserve themselves from danger. The Iowa Court made early reference to this natural instinct in the case of Greenleaf v. Illinois Cent. R. Co., 1870, 29 Iowa 14, 4 Am.Rep. 181. The rule is now well settled and established Iowa law. It has in general been applied when the injured person was deceased, but, in certain instances has been held applicable where the injured party was still living. Prewitt v. Rutherford, Iowa 1947, 30 N.W.2d 141. See annotation 141 A.L.R. 872. The rule is applicable only upon the issue of the plaintiff's freedom from contributory negligence, and cannot be invoked by a defendant to aid his case on the issue of negligence. DeBuhr v. Taylor, 1942, 232 Iowa 792, 5 N.W.2d 597. See also, Vance v. Grohe, 1937, 223 Iowa 1109, 274 N.W. 902, 116 A.L.R. 332.

It appears that in order for the plaintiff to invoke the rule, he has the burden of establishing the foundation fact of a lack of obtainability of direct evidence relating to the conduct of the injured person concerned in his case. Low v. Ford Hopkins Co., 1941, 231 Iowa 251, 1 N.W.2d 95; Sanderson v. Chicago M. St. P. R. Co., 1914, 167 Iowa 90, 149 N.W. 188. The defendant, of course, may controvert the laying of that foundation fact by showing that direct evidence is obtainable. However, it seems that in Iowa it is not sufficient for the defendant merely to tender to the plaintiff the name of a purported eyewitness in open court. Jensvold v. Chicago Great Western Ry. Co., 1943, 234 Iowa 627, 12 N.W.2d 293; see contra, Chapman v. Bruton, 1943, 325 Ill.App. 334, 60 N.E.2d 125.

The Iowa No Eyewitness Rule is that in the absence of an eyewitness or of any obtainable direct evidence as to what a deceased person did or failed to do by way of precaution, at and immediately before the injury of which complaint is made, an inference that men usually and ordinarily do instinctively exercise care for their own safety may be considered as evidence tending to establish that he, prompted by that natural instinct was during that period of time in the exercise of care for his own safety. Edwards v. Perley, 1936, 223 Iowa 1119, 274 N.W. 910; Azeltine v. Lutterman, 1934, 218 Iowa 675, 254 N.W. 854; Lorimer v. Hutchinson Ice Cream Co., 1933, 216 Iowa 384, 249 N.W. 220; Merchants' Transfer & Storage Co. v. Chicago R. I. & P. R. Co., 1915, 170 Iowa 378, 150 N.W. 720; Sanderson v. Chicago M. & St. P. R. Co., 1914, 167 Iowa 90, 149 N.W. 188; Wilson v. Chicago M. & St. P. R. Co., 1913, 161 Iowa 191, 142 N.W. 54; Phinney v. Illinois Cent. R. Co., 1904, 122 Iowa 488, 98 N.W. 358; Bell v. Incorporated Town of Clarion, 1901, 113 Iowa 126, 84 N.W. 962; Dalton v. Chicago R. I. & P. R. Co., 1897, 104 Iowa 26, 73 N.W. 349, second appeal 1901, 114 Iowa 257, 86 N.W. 272; Hopkinson v. Knapp & Spaulding, 1894, 92 Iowa 328, 60 N.W. 653.

The presumption or inference stands as an aid to sustaining the plaintiff's burden of proof of due care but in no way shifts the burden of proving contributory negligence to the defendant; it is not in itself conclusive as to freedom from contributory negligence, but, rather, is to be considered with all the facts and circumstances surrounding the case in determining the issue of contributory negligence. DeBuhr v. Taylor, 1942, 232 Iowa 792, 5 N.W.2d 597; Azeltine v. Lutterman, 1934, 218 Iowa 675, 254 N.W. 854; Anderson v. Ft. Dodge D. M. & S. R., 1929, 208 Iowa 369, 226 N. W. 151; Barrett v. Chicago, M. & St. P. R. Co., 1920, 190 Iowa 509, 175 N.W. 950, 180 N.W. 670; Wensel v. Chicago M. & St. P. R. Co., 1919, 185 Iowa 680, 170 N.W. 409; Carpenter v. Loetscher-Jaeger Co., 1916, 178 Iowa 320, 157 N.W. 938; Johnston v. Delano, 1915, 175 Iowa 498, 154 N.W. 1013; Merchants' Transfer & Storage Co. v. Chicago R. I. & P. R. Co., 1915, 170 Iowa 378, 150 N.W. 720; Sanderson v. Chicago, M. &

St. P. R. Co., 1914, 167 Iowa 90, 149 N.W. 188; Breen v. Iowa Cent. R. Co., 1913, 163 Iowa 264, 143 N.W. 846 (2d appeal); Wilson v. Chicago, M. & St. P. R. Co., 1913, 161 Iowa 191, 142 N.W. 54; Frederickson v. Iowa Cent. R. Co., 1912, 156 Iowa 26, 135 N.W. 12, Ann.Cas.1915B, 224; Brown v. West Riverside Coal Co., 1909, 143 Iowa 662, 120 N.W. 732, 28 L.R.A.,N.S., 1260; Gray v. Chicago R. I. & P. R. Co., 1909, 143 Iowa 268, 121 N.W. 1097 (first appeal); Lunde v. Cudahy Packing Co., 1908, 139 Iowa 688, 117 N.W. 1063; Christopherson v. Chicago M. & St. P. R. Co., 1906, 135 Iowa 409, 109 N.W. 1077, 124 Am.St.Rep. 284; Bell v. Incorporated Town of Clarion, 1901, 113 Iowa 126, 84 N.W. 962; Way v. Illinois Cent. R. Co., 1875, 40 Iowa 341.

■ In general, the inference has sufficient probative force in itself to take a plaintiff's case to the jury on the question of freedom from contributory negligence. In re Goretska's Estate, 1944, 234 Iowa 1080, 13 N.W.2d 432; Graham v. City of Ames, 1923, 196 Iowa 337, 192 N.W. 299; Carpenter v. Loetscher-Jaeger Co., 1916, 178 Iowa 320, 157 N.W. 938; Korah v. Chicago R. I. & P. R. Co., 1910, 149 Iowa 711, 128 N.W. 529, 41 L.R.A.,N.S., 32; Bell v. Incorporated Town of Clarion, 1901, 113 Iowa 126, 84 N.W. 962; Spaulding v. Chicago St. P. & K. C. R. Co., 1896, 98 Iowa 205, 67 N.W. 227; Hopkinson v. Knapp & Spaulding, 1894, 92 Iowa 328, 60 N.W. 653.

■ In certain cases, however, the physical facts may be such as to establish that the injured party was guilty of contributory negligence as a matter of law, and, opposed to such a state of circumstances, the inference is insufficient to create a question of fact as to the issue of contributory negligence. Hitchcock v. Iowa Southern Utilities Co., 1942, 233 Iowa 301, 6 N.W.2d 29; Shannahan v. Borden Produce Co., 1935, 220 Iowa 702, 263 N.W. 39; Boles v. Hotel Maytag Co., 1934, 218 Iowa 306, 253 N.W. 515; Van Gorden v. City of Ft. Dodge, 1932, 216 Iowa 209, 245 N.W. 736; Tegtmeyer v. Byram, 1927, 204 Iowa 1169, 216 N.W. 613; Wasson v. Illinois Cent. R. Co., 1927, 203 Iowa 705, 213 N.W. 388; Lambrakis v. Chicago R. I. & P. R. Co., 1924, 198 Iowa 641, 199 N.W. 994; Stark v.

Tabor & N. R. Co., 1913, 161 Iowa 393, 142 N.W. 977; Baker v. Chicago R. I. & P. R. Co., 1895, 95 Iowa 163, 63 N.W. 667.

■ Except in cases where the physical facts show unquestionable contributory negligence, the inference is not generally so overcome by circumstantial evidence as to make the question of freedom from contributory negligence a matter of law for the court. Laudner v. James, 1936, 221 Iowa 863, 266 N.W. 15; Anderson v. Chicago R. I. & P. R. Co., 1920, 189 Iowa 739, 175 N.W. 583; Stukas v. Warfield-Pratt-Howell Co., 1919, 188 Iowa 878, 175 N.W. 81; Johnston v. Delano, 1915, 175 Iowa 498, 154 N.W. 1013; Bettinger v. Loring, 1914, 168 Iowa 103, 150 N.W. 31; Wilson v. Chicago, M. & St. P. R. Co., 1913, 161 Iowa 191, 142 N.W. 54; Korah v. Chicago R. I. & P. R. Co., 1910, 149 Iowa 711, 128 N.W. 529, 41 L.R.A.,N.S., 32; Brown v. West Riverside Coal Co., 1909, 143 Iowa 662, 120 N.W. 732, 28 L.R.A.,N.S., 1260; Ellis v. Republic Oil Co., 1906, 133 Iowa 11, 110 N.W. 20; Burns v. Chicago M. & St. P. R. Co., 1886, 69 Iowa 450, 30 N.W. 25, 58 Am. Rep. 227.

■ The inference does not afford an affirmative excuse for acts of admitted negligence. Hittle v. Jones, 1933, 217 Iowa 598, 250 N.W. 689; Van Gorden v. City of Ft. Dodge, 1932, 216 Iowa 209, 245 N.W. 736.

■ The inference obtains only during a relevant period of time preceding and until the mishap in question. That period of time is often termed the "material moments" of the mishap; the inference does not cover periods of time remote from those moments nor does it cover periods during those moments which are covered by direct evidence. Graby v. Danner, 1945, 236 Iowa 700, 18 N.W.2d 595; Hayes v. Stunkard, 1943, 233 Iowa 582, 10 N.W.2d 19; Laudner v. James, 1936, 221 Iowa 863, 266 N.W. 15; Hittle v. Jones, 1933, 217 Iowa 598, 250 N.W. 689; Lorimer v. Hutchinson Ice Cream Co., 1933, 216 Iowa 384, 249 N.W. 220; Merchants' Transfer & Storage Co. v. Chicago, R. I. & P. R. Co., 1915, 170 Iowa 378, 150 N.W. 720; Gray v. Chicago R. I. & P. R. Co., 1913, 160 Iowa 1, 139 N.W. 934 (2d appeal); Ames v.

Waterloo & C. F. Rapid Transit Co., 1903, 120 Iowa 640, 95 N.W. 161.

What constitutes material moments under the rule varies as to the conditions and circumstances in a particular case. The period of material moments in collision cases naturally covers a period of time greater than an instant preceding the impact. Hayes v. Stunkard, 1943, 233 Iowa 582, 10 N.W.2d 19; Anderson v. Ft. Dodge, D. M. & S. R. Co., 1929, 208 Iowa 369, 226 N.W. 151; Rastede v. Chicago, St. P. M. & O. R. Co., 1927, 203 Iowa 430, 212 N.W. 751; Arnold v. Douglas & Co., 1916, 176 Iowa 405, 155 N.W. 845; Schnee v. City of Dubuque, 1904, 122 Iowa 459, 98 N.W. 298.

On the other hand, if that instant preceding the impact is the only period of the material moments which is not covered by direct evidence, and it appears that the person whose conduct is in question could have done nothing during that instant to extricate himself from the peril of the impending collision, the inference of due care during that instant would not create an issue as against direct testimony as to acts of unquestionable negligence which contributed to his peril throughout the other material moments. Shannahan v. Borden Produce Co., 1935, 220 Iowa 702, 263 N.W. 39; Brown v. McAdoo, 1922, 195 Iowa 286, 188 N.W. 7; Bussler v. Chicago M. St. P. R. Co., 1914, 165 Iowa 361, 145 N.W. 533; Stark v. Tabor & N. R. Co., 1913, 161 Iowa 393, 142 N.W. 977; Thompson v. Chicago Great Western R. Co., 1913, 162 Iowa 468, 142 N.W. 223.

As is implied from the name of the rule, the inference, in general, is applicable neither where the injured party can himself give an account of his relevant conduct nor where there is an eyewitness to such conduct. In such cases, the inference seems to be considered as secondary evidence, the admission of which would be prejudicial error. Spooner v. Wisecup, 1939, 227 Iowa 768, 288 N.W. 894; Vance v. Grohe, 1937, 223 Iowa 1109, 274 N.W. 902, 116 A.L.R. 332; Edwards v. Perley, 1936, 223 Iowa 1119, 274 N.W. 910; Lindloff v. Duecker, 1933, 217 Iowa 326, 251 N.W. 698; Kessel v. Hunt, 1932, 215 Iowa 117, 244 N.W. 714;

Brown v. McAdoo, 1922, 195 Iowa 286, 188 N.W. 7; Arnold v. Douglas Co., 1916, 176 Iowa 405, 155 N.W. 845; Merchants' Transfer & Storage Co. v. Chicago R. I. & P. R. Co., 1915, 170 Iowa 378, 150 N.W. 720; Sanderson v. Chicago M. St. P. R. Co., 1914, 167 Iowa 90, 149 N.W. 188; Wilson v. Illinois Cent. R. Co., 1911, 150 Iowa 33, 129 N.W. 340, 34 L.R.A.,N.S., 687; Golinvaux v. Burlington C. R. & N. R. Co., 1904, 125 Iowa 652, 101 N.W. 465; Burk v. Walsh, 1902, 118 Iowa 397, 92 N.W. 65; Bell v. Incorporated Town of Clarion, 1901, 113 Iowa 126, 84 N.W. 962; Ellis v. Leonard, 1899, 107 Iowa 487, 78 N.W. 246; Salyers v. Monroe, 1897, 104 Iowa 74, 73 N.W. 606; Hopkinson v. Knapp & Spaulding Co., 1894, 92 Iowa 328, 60 N.W. 653; Reynolds v. City of Keokuk, 1887, 72 Iowa 371, 34 N.W. 167; Dunlavy v. Chicago R. I. & P. R. Co., 1885, 66 Iowa 435, 23 N.W. 911; Whitsett v. Chicago R. I. & P. R. Co., 1885, 67 Iowa 150, 25 N.W. 104.

An eyewitness under the rule is one who can state from his own observation what the injured party did or failed to do in the exercise of due care for his own safety. Graby v. Danner, 1945, 236 Iowa 700, 18 N.W.2d 595; Jensvold v. Chicago Great Western R. Co., 1944, 234 Iowa 627, 12 N.W.2d 293; Davidson v. Vast, 1943, 233 Iowa 534, 10 N.W.2d 12; Hayes v. Stunkard, 1943, 233 Iowa 582, 10 N.W.2d 19; Rastede v. Chicago St. P. M. & O. R. Co., 1927, 203 Iowa 430, 212 N.W. 751; Brown v. McAdoo, 1922, 195 Iowa 286, 188 N.W. 7; Arnold v. Douglas & Co., 1916, 176 Iowa 405, 155 N.W. 845; Lunde v. Cudahay Packing Co., 1908, 139 Iowa 688, 117 N.W. 1063; Phinney v. Illinois Cent. R. Co., 1904, 122 Iowa 488, 98 N.W. 358.

Where the evidence given by a purported eyewitness is somewhat contradictory as to the extent of his observations, or his observation of the conduct of the person concerned is fragmentary in character, it seems that the question as to whether the witness was an eyewitness within the meaning of the rule should be submitted to the jury with an instruction that it is to determine the status of the witness in question as an eyewitness and to draw or not

to draw the inference accordingly. Azeltine v. Lutterman, 1934, 218 Iowa 675, 254 N.W. 854; Rastede v. Chicago St. P. M. & O. R. Co., 1927, 203 Iowa 430, 212 N.W. 751; Barrett v. Chicago M. St. P. R. Co., 1920, 190 Iowa 509, 175 N.W. 950, 180 N.W. 670; Gray v. Chicago R. I. & P. R. Co., 1913, 160 Iowa 1, 139 N.W. 934; Platter v. Minneapolis & St. L. R. Co., 1913, 162 Iowa 142, 143 N.W. 992.

 Where, however, a witness testifies directly and unqualifiedly as to relevant conduct on the part of the person injured, the witness' status as an eyewitness is not a question for determination by the jury, nor is the option of considering the inference to be left to the jury. Edwards v. Perley, 1936, 223 Iowa 1119, 274 N.W. 910; See Rastede v. Chicago St. P. M. & O. R. Co., 1927, 203 Iowa 430, 212 N.W. 751; See also dicta of Court as to factual situation of probability of eyewitnesses in Barrett v. Chicago M. St. P. R. Co., 1920, 190 Iowa 509, 175 N.W. 950, 180 N.W. 670.

 It seems that in general whether or not a person is entitled to the inference of due care raised by the no eyewitness rule is a matter to be determined by the Court. Rastede v. Chicago St. P. M. & O. R. Co., 1927, 203 Iowa 430, 212 N.W. 751.

One of the grounds of the defendant's motion for a directed verdict made at the end of the plaintiff's case and renewed at the end of the entire trial was that there was lacking any evidence upon which a jury could base a finding that Harry E. Mast was free from contributory negligence. At this point in the trial it was asserted in behalf of the plaintiff that as to the case of Harry E. Mast she was relying upon the no eyewitness rule on the issue of contributory negligence. As has been heertofore noted, the two boys, Clarence and Wayne Mast, were riding in the truck at the time of the collision. At the time of the trial Clarence Mast was 15 years of age and Wayne Mast was 12 years of age. They were admittedly present in the court room at various times during the course of the trial. Had the boys testified in their own cases or in behalf of the plaintiff's case, their ages either at the time of the trial or at the time of the mishap would not have precluded their being competent witnesses so long as they understood the obligation of an oath. State v. Diggins, 1939, 227 Iowa 632, 288 N.W. 640; State v. Yates, 1917, 181 Iowa 539, 164 N.W. 798. Neither of the boys was called as a witness and no statement was made during the course of the trial for their not having been called. When the plaintiff claimed the benefit of the no eyewitness rule, the defendant asserted that the boys were presumably and apparently eyewitnesses, and that the plaintiff could not refrain from calling them as such, thereby to receive the benefit of the no eyewitness rule. Attached to the plaintiff's motion for a new trial in this case are the affidavits of the two boys in which they state in substance that they first knew of the train when the collision occurred, that they heard neither bell nor whistle, and that they did not know what their father, Harry E. Mast, was doing as the truck approached the crossing.

At the time of the motion for a directed verdict at the end of the case, however, it seemed that these boys constituted a possible source from which direct evidence could be obtained, generally as to how the accident happened, and specifically as to what Harry E. Mast might or might not have done in the operation of the truck which carried him to his death and the boys to the injuries of which they complain. This would seem to have been true although both the plaintiff and the fireman on the defendant's train testified that the boys were riding in the box of the truck rather than in the cab with their father. As passengers upon the truck, it seemed that they could have testified directly as to its diminishing of speed, change of course, or other manifestations through its movement of definite conduct on the part of its operator, Harry E. Mast, even though they could not because of their position in the box see the actual manual operation of the truck or the observations of their father.

 It is a general rule of law that presumptions do not create their own foundations. Highland Golf Club v. Sinclair

Refining Co., D.C. Iowa 1945, 59 F.Supp. 911. The Iowa Supreme Court states in Monaghan v. Equitable Life Ins. Co., 1918, 184 Iowa 352, 168 N.W. 892, at page 893: "But that certain evidence will raise a presumption of negligence does not in the least tend to establish that there is such evidence; and presumption warranted by the existence of certain facts is no evidence of the existence of such facts." For a plaintiff to receive the benefit of the inference of due care based upon the no eyewitness rule, it must appear that there is no *obtainable* direct evidence as to the nature of the conduct of the person for whose injuries recovery is sought. Edwards v. Perley, 1936, 223 Iowa 1119, 274 N.W. 910. As has been previously stated, the plaintiff seeking such a benefit has the burden of establishing such lack of obtainability of direct evidence. Low v. Ford Hopkins Co., 1941, 231 Iowa 251, 1 N.W.2d 95. That case inferentially required it to be "conclusively established" that there was a lack of such direct evidence in a factual situation surrounding the fall of the plaintiff's decedent in the defendant's store at a time when it was crowded with clerks and customers. The Iowa Court in the Low case stated it to be an insufficient showing of a lack of obtainable direct evidence by the mere testimony of a former manager of the defendant that none of the clerks stated that they had seen the mishap. In the case of Sanderson v. Chicago M. St. P. R. Co., 1914, 167 Iowa 90, 149 N.W. 188, at page 193, the Iowa Supreme Court states: "It has never been held, nor would it present a sound legal or moral doctrine to say that one, whose conduct is involved, may withhold evidence at hand, or evidence within his reach, which would tend to show what his conduct was, whether careful or negligent, and then reply upon and have the benefit of the mere presumption or inference that he was careful. If this were to be tolerated, then in every case of personal injury resulting in death, the plaintiff could refrain from calling any witnesses, no matter how numerous they might be, who knew or could testify as to the deceased's conduct at, or about the time of the injury, and rely upon the inference that he was

exercising reasonable care for his own safety, and thereby avoid the necessity of proving, by direct testimony, an ultimate fact essential to his right to recover, or shift the burden of proof upon the defendant to show that he was, in fact, negligent."

Without passing upon the sufficiency of a showing of a lack of direct evidence, it may here be seriously questioned in the light of the aforementioned cases and in the light of the factual situation presented by the two boys having been parties involved closely and directly with the mishap now in question, whether or not a sufficient foundation was laid by the plaintiff for any application of the no eyewitness inference to her case. It is not necessary to pass upon the sufficiency of this questionable foundation at this time because of the presence in the record of the testimony of Fireman Keith. That testimony will further be dealt with as to its relation to the no eyewitness rule.

▮ The first question which presents itself in considering that testimony is whether or not, as revealed by his testimony, Keith constituted an eyewitness to the collision and to the relevant conduct of the decedent. While it is not the function of the Court in this opinion to pass upon the credibility of any witness, it seems established that whether or not a plaintiff is entitled to the benefit of an inference of due care raised by the operation of the no eyewitness rule is in general a matter to be determined by the Court, and that such determination is to be reached by a consideration of the substance of the testimony of the purported eyewitness to the mishap in question without questioning specifically his credibility. Edwards v. Perley, 1936, 223 Iowa 1119, 274 N.W. 910; Rastede v. C. St. P. M. & O. R. Co., 1927, 203 Iowa 430, 212 N.W. 751. It is not generally a jury question to decide whether or not there were eyewitnesses to a mishap. Rastede v. Chicago St. P. M. & O. R. Co., *supra.*

The substance of the testimony of Fireman Keith seems to show clearly that whether or not he could observe any move-

ments on the part of the person of the decedent himself in the operation of the truck, he could and did observe the movements of the truck from the point 100 to 125 feet away from the crossing to the point where it became apparent that the truck was not going to stop at the crossing for the approaching train. If it be conceded that Keith was unable to observe the person of the decedent himself as to his specific conduct in the manual operation of the truck, the question then becomes reduced to whether or not one who observes the conduct of another exclusively through the movements manifested by the operation of an instrumentality such as an automobile can be an eyewitness to that person's conduct from the standpoint of eliminating from a plaintiff's case the benefit of the no eyewitness rule.

It is urged by counsel for the plaintiff that the type of observation which Fireman Keith testified he had of the mishap is insufficient to deny the plaintiff the benefit of the no eyewitness rule. It is their contention that an eyewitness in a factual situation such as this case presents must be one who can observe whether or not the decedent "looked or listened," as well, apparently, as one who observed the movements of the respective instrumentalities involved in the mishap.

The cases granting or denying a plaintiff the benefit of an inference of due care as to the decedent or other person involved in a mishap are numerous and apparently not in entire harmony. However, a review of those cases in which the no eyewitness rule has been applied in Iowa seems to show that the purported eyewitness must have been able to testify as to the conduct of the person involved in such a manner that, either as a matter of fact, or as a matter of law, that conduct can be determined to have been either negligent or prudent in the light of the particular factual situation involved. Jensvold v. Chicago Great Western R. Co., 1943, 234 Iowa 627, 12 N.W.2d 293; Hayes v. Stunkard, 1943, 233 Iowa 582, 10 N.W.2d 19. Hence, a witness able to testify only as to matters which would bear upon particular acts of a decedent which could not possibly have contributed in any way or in any degree directly to the mishap of which complaint is made could not be termed an eyewitness for the purpose of eliminating the invocation of the no eyewitness rule to aid a plaintiff in establishing his burden of proving freedom from contributory negligence. Consumers Power Co. v. Nash, 6 Cir., 1947, 164 F.2d 657.

The matter of "looking and listening" seems to have both subjective and objective aspects. Whether a person sees or hears, as distinguished from the question of whether had he looked or listened, he should have seen or heard, is a fact which for all practical purposes is known but to that person himself. It is hence primarily a subjective matter. If the person whose conduct is in question is alive, however, and testifies that he looked, listened, and otherwise behaved in a certain manner pertinent to the issues involved, the direct evidence which he furnishes by such testimony eliminates from the consideration of the jury any inference or presumption arising from the lack of such obtainable direct evidence as to his conduct. Vance v. Grohe, 1937, 223 Iowa 1109, 274 N.W. 902, 116 A.L.R. 332. In like manner, if an eyewitness watches a person approach the mishap in which he meets his death, observes the conduct of such decedent during all the material moments pertaining to the mishap, and the witness then testifies as to the decedent's conduct in such a manner that from the account a jury could find that the decedent was during those moments conducting himself in a negligent or prudent manner, such testimony also eliminates from the trial any necessity of instruction of the jury as to the inference of due care because of a lack of obtainable direct evidence. Edwards v. Perley, 1936, 223 Iowa 1119, 274 N.W. 910. The Sixth Circuit Court of Appeals in the case of Consumers Power Co. v. Nash, 1947, 164 F.2d 657, at page 659, makes this succinct observation: "Presumptions are but generalizations from experience and must give way to evidence, when living witnesses may intelligently speak. The sensory impressions of eyewitnesses to an automobile collision, where

time interval between fault and injury is frequently measurable, permit a judgment to be formed both as to primary and contributory negligence."

The direct evidence given by such an eyewitness is, however, based entirely upon manifestations of particular behavior of the decedent. It concerns primarily objective matters. The eyewitness cannot generally discern from his observation that the decedent saw or heard. Such a witness can often only testify that the decedent's position was such that he could or could not have been looking or listening, or that he possibly was conducting himself as one who looks or listens, or that he appeared as one who had seen or heard an object which required specific conduct on his part in response thereto. The eyewitness' testimony hence cannot in every case supply the information that the decedent did see or hear. It can, generally, supply evidence from which a jury can conclude from the account of the eyewitness that the decedent did see or should have seen, did hear or should have heard, and, in response to his sensory perceptions, did behave or should have otherwise behaved in a certain manner.

It would seem then that it must be concluded that an eyewitness cannot in every case testify that a person looked or listened except from that person's behavior subsequent to and in response to his seeing or hearing. It is true that in some cases the Iowa Supreme Court has stated that a jury question existed as to a decedent's contributory negligence by virtue of the no eyewitness rule because of a lack of direct evidence as to whether the decedent "looked or listened." The matter of "looking and listening," it is believed, also necessarily implies in the case of a motor vehicle operator, his being watchful of and governing the movements of his vehicle in response to what is seen or heard. See Hittle v. Jones, 1933, 217 Iowa 598, 250 N.W. 689. This belief is consistent with and substantiated by the accepted definition of "keeping a proper lookout" in motor vehicle law as found in Rebmann v. Heesch, 1939, 227 Iowa 566, 288 N.W. 695, 701. That definition, is, in part, to be "watchful of

the movements of [one's] own vehicle as well as the movements of the thing seen." The effect of holding otherwise as to eyewitnesses would be obvious in the case of motor vehicle collisions in which the respective operators over great distances watched the other vehicle approach, but, because of the structure of modern automobiles, could not say from observation what the other did in the matter of observing from and manually operating his vehicle. Although the surviving operator could state exactly what the other vehicle did, if its operator were killed, because of a lack of personal observation of the decedent's conduct, there would be no eyewitnesses to the relevant conduct in question. It is not believed that the inference is intended to be applied where such testimony is available. Hitchcock v. Iowa Southern Utilities Co., 1942, 233 Iowa 301, 6 N.W.2d 29. See Pazen v. Des Moines Transp. Co., 1937, 223 Iowa 23, 272 N.W. 126.

Examination of the cases in which the inference is allowed also often reveals that the decedent involved was a passenger and not the operator of the vehicle in question. Where such is the case, and the decedent is shown to have had little, if any, control over the operation of the instrumentality in which he rode, the conduct which must be established in evidence to sustain the burden of showing his due care is obviously of a different and less stringent nature than the burden upon the plaintiff whose decedent was in fact the operator of the vehicle or instrumentality involved in the mishap. It is believed that one could sit beside a passenger and be unable to say that the passenger looked, or listened, or saw or heard, because of a lack of necessary objective responsive behavior to those sensory perceptions. One can more often conclude, however, that an operator of a motor vehicle saw or heard, or had looked or listened, because of the necessity for his direct and immediate responsive behavior to such perceptions.

The matter of the nature of the proof of due care which a plaintiff must sustain as his burden regarding his decedent's case is hence a variable to be determined by con-

sidering the surrounding circumstances, and is also dependent upon the status of the person involved in the mishap of which complaint is made. The Iowa Supreme Court stated in what is perhaps the earliest Iowa case involving an instruction regarding the inference of due care based on the natural instincts of man to avoid danger, Greenleaf v. Illinois Cent. R. Co., supra, "How clear, and the nature of the evidence to show a want of negligence must, of course, depend upon the time, place, and surroundings of the parties, as well as many other matters which we need not enumerate, but which will readily occur to the non professional as well as to the legal mind." The modern and more pertinent counterparts of this pronouncement are the recent and emphatic statements of the Iowa Supreme Court that rules governing the question of contributory negligence in the matter of vigilance of automobile guests are decidedly different from those rules governing the question of contributory negligence in that respect as to operators of vehicles. Kinney v. Larsen et al., Iowa, 1948, 31 N.W.2d 635; Frideres v. Lowden, 1945, 235 Iowa 640, 17 N.W.2d 396; Jensvold v. Chicago Great Western R. Co., 1943, 234 Iowa 627, 12 N.W.2d 293; Finley v. Lowden, 1938, 224 Iowa 999, 277 N.W. 487. This distinction between passenger and operator on the issue of freedom from contributory negligence operated in favor of the two sons of the decedent, Clarence and Wayne, in allowing a basis for submitting their cases to the jury upon the issue of that freedom. Another ground in their favor as to proof of that issue was an inference of incapability of contributory negligence based upon their ages of twelve and nine respectively at the time of the mishap. Webster v. Luckow, 1935, 219 Iowa 1048, 258 N.W. 685. See also annotations to the cases of Eckhardt v. Hanson, 1936, 196 Minn. 270, 264 N.W. 776, 107 A.L.R. 1, and Verni v. Johnson, 1946, 295 N.Y. 436, 68 N.E.2d 431, 174 A.L.R. 1078.

■ It is believed that in most cases, and that in the instant case, a witness to the movements and change of movement of a motor vehicle during the material moments in which it approaches a mishap in which the operator is killed is for all practical purposes and, for purposes of eliminating the necessity of the invocation of the no eyewitness rule, an eyewitness to the conduct of the operator, and, can give direct evidence as to facts of relevant conduct from which it can be determined whether or not the operator was or was not in the exercise of due care. In the case of Hitchcock v. Iowa Southern Utilities, supra, the train crew testified as to watching the movements of the vehicle operated by the decedent for whose injuries recovery was sought. The Iowa Supreme Court stated as to them, 6 N.W.2d at page 36: "But in the instant case there is direct testimony of the acts and conduct of decedent, of the manner in which he drove his car from the time he crossed the Wabash tracks until he reached the point of collision. The testimony of the witnesses and the physical facts preclude the application of the no-eyewitness rule." Other ca s in which observers of the vehicle only have been termed eyewitnesses of this nature are: DeBuhr v. Taylor, 1942, 232 Iowa 792, 5 N.W.2d 597; Shannahan v. Borden Produce Co., 1935, 220 Iowa 702, 263 N.W. 39. See, also, Pazen v. Des Moines Transp. Co., supra; Brown v. McAdoo, supra.

■ At the end of the case here considered, all the plaintiff's evidence, when viewed in its light most favorable to her, showed in substance that Harry E. Mast left his farmstead adjacent to the crossing in question, drove 175 feet down a country road in front of his farm, thereon approached an obscured crossing, and was there killed by a fast-moving train which gave neither bell nor whistle warning of its approach. Without more than this, but with the benefit of an inference of due care based upon the no eyewitness rule, undoubtedly a jury question as to Harry E. Mast's contributory negligence would have existed. However, the direct evidence presented by the defendant's fireman added the details hereafter set forth as to his conduct. It supplied the information that he drove toward the crossing at a speed of from 15 to 20 miles an hour. Testimony only as

to the speed at which an operator approached a crossing in all probability would not in itself preclude the plaintiff from having the benefit of the no eyewitness rule. Jensvold v. Chicago Great Western R. Co., 1943, 234 Iowa 627, 12 N.W.2d 293. But the testimony also shows that Harry E. Mast never changed his course nor decelerated to a perceptible degree from the time when he was a distance of 100–125 feet away from the crossing to the time when the fireman realized that the operator of the truck, although only a few feet away from the zone of danger of the crossing, with the train practically and visibly upon him, was unaware of his peril and was not going to stop. While this testimony as to observation of the truck covers a period in which Harry E. Mast covered distances to the crossing in which, according to the plaintiff's evidence, neither the truck nor the train should have been visible to the occupants in the other, it also concerns observations made over the closer distances in which, even under the evidence of obstruction most favorable to the plaintiff, the occupants of either the truck or locomotive could clearly have observed the other moving object. It covers the period during which any precautions taken by the operator of the truck in response to any observations he had made whatever, would have been apparent to an observer of the movements of the truck. It seems clear that Fireman Keith's testimony covered the material moments preceding the collision, and that his testimony bore directly upon the relevant conduct of Harry E. Mast during those moments. It is believed that in such a factual situation, one viewing the movements of a motor vehicle during the moments in which it covered this distance to a crossing, and being in a position to see its change of course, or its acceleration or deceleration, is unquestionably an eyewitness as to the conduct of the operator of that vehicle. See Van Wie v. United States, D.C.Iowa, 77 F.Supp. 22.

It is the holding of the Court that Fireman Keith was such an eyewitness as to deny the plaintiff the benefit of the no eyewitness rule. That holding is not a ruling that Harry E. Mast was guilty of contributory negligence as a matter of law, and did not involve passing upon the credibility of Fireman Keith as a witness, nor did it concern the weight to be given to his testimony. The effect of the holding is that upon the issue of freedom from contributory negligence on the part of Harry E. Mast, the plaintiff is not entitled to the inference under the no eyewitness rule that he during the material moments preceding the collision was in the exercise of due care, and that to sustain her burden to prove that due care, the plaintiff was required to produce other evidence or inferences.

■ Hence, while the storm centers in this litigation have been in regard to the applicability of the last clear chance and no eyewitness rules, it is still to be considered whether, without either of these rules being involved, the case should have been submitted to the jury. The plaintiff having presented ample evidence from which a jury could find that the defendant was negligent, the question remaining for consideration is concerned only with the issue of contributory negligence. That question relates to the sufficiency of the evidence to make an issue for the jury as to whether Harry E. Mast took such precautions for his own safety as would have been taken by a reasonably prudent person under the same or similar circumstances. In considering that question, this Court is governed by the applicable Iowa law as pronounced by the Iowa Supreme Court, and in instances where there is lack of harmony or apparent lack of harmony in those pronouncements, the latest pronouncements are to be followed.

■ Under the Iowa law a scintilla of evidence is not sufficient to make an issue for the jury. Scott v. Hansen, 1940, 228 Iowa 37, 289 N.W. 710. It is well-settled that freedom from contributory negligence is never presumed. Schelldorf v. Cherry, 1935, 220 Iowa 1101, 264 N.W. 54. It is also well-settled that no inference of negligence arises from the mere fact that a collision occurred. Armbruster v. Gray, 1938, 225 Iowa 1226, 282 N.W. 342. The proposition of freedom from contributory negligence may be established by circumstan-

tial evidence. Beach v. City of Des Moines, Iowa, 1947, 26 N.W.2d 81, 87. In order to establish a proposition by means of circumstantial evidence, however, the facts relied upon must be of such a nature and so related to each other that the claimed conclusion from the circumstances is the only conclusion which can fairly or reasonably be drawn from them. Rusch v. Hoffman, 1937, 223 Iowa 895, 274 N.W. 96; Boles v. Hotel Maytag Co., 1934, 218 Iowa 306, 253 N.W. 515. In the case of Westland Oil Co. v. Firestone Tire & Rubber Co., 1944, 143 F.2d 326, 331, the Eighth Circuit Court of Appeals in a case having to do with the proof of an issue by circumstantial evidence stated that, "where evidence is equally consistent with two opposing hypotheses it is without probative force and tends to support neither," and that where proof rests upon circumstantial evidence, "the circumstances must do more than bring plaintiff's theories within the realm of possibilities."

The Iowa Supreme Court has pointed out that there is a distinction between cases where a court rules that as a matter of law a person was guilty of negligence and those cases where a court rules that there is not sufficient evidence from which the jury could find that the proposition of freedom from contributory negligence had been established. Scherer v. Scandrett, 1944, 235 Iowa 229, 16 N.W.2d 329, 331. See, also, Bryson v. Chicago B. & Q. R. Co., 1894, 89 Iowa 677, 57 N.W. 430. The question as to whether a person injured in a railroad crossing collision was guilty of contributory negligence as a matter of law arises most frequently in cases where the view at the crossing was unobstructed. See Kinney v. Larsen, Iowa 1948, 31 N.W.2d 635. The question involved in the present case relates only to the sufficiency of the evidence upon the issue of freedom from contributory negligence.

The plaintiff in the present case had the burden of presenting evidence from which the jury could find that Harry E. Mast took reasonable precautions for his own safety. This Court has ruled that that burden was not aided by any inference that he was in the exercise of due care. The proof of the plaintiff consisted only of evidence that Harry E. Mast left home and was killed at an obscured railroad crossing by a train which did not give proper warning of its approach to the crossing. It is well-settled that the failure of those in charge of a train to give proper warning of its approach to a crossing is a proper matter to be considered on the issue of freedom from contributory negligence on the part of a person injured at the crossing. Rastede v. Chicago St. P. M. & O. R. Co., 1927, 203 Iowa 430, 212 N.W. 751. It is equally well-settled that a traveler using a railroad crossing has a right to rely upon such warning being given and that the matter of such reliance is also a proper matter to be considered on that issue. Coonley v. Lowden, 1944, 234 Iowa 731, 12 N.W.2d 870, 875. It is also well-settled that the fact that the view at a crossing is obstructed is a proper matter to be considered on that issue. Coonley v. Lowden, supra. While the circumstances of obstructed view and absence of warning by the train are proper matters to be considered on the issue of contributory negligence, they do not of themselves constitute affirmative evidence as to what precautions the injured person did or did not take for his own safety. The failure of a railroad company to give warning of the approach of one of its trains to a crossing does not excuse a person preparing to use the road over the tracks from taking reasonable precautions for his own safety. Ballard v. Chicago R. I. & P. R. Co., 1922, 193 Iowa 672, 185 N.W. 993, 995; Coonley v. Lowden, supra. The operator of a motor vehicle approaching a crossing where the view is obstructed must do all those acts and things which a person of ordinary care and prudence would do under the circumstances. Yanaway v. Chicago R. I. & P. R. Co., 1922, 195 Iowa 86, 190 N.W. 21, 23.

The latest pronouncement of the Iowa Supreme Court concerning the issue of freedom from contributory negligence in railroad crossing collision cases is found in Kinney v. Larsen, Iowa 1948, 31 N.W.2d 635. In that case the Court stated that where the view at a crossing is so obstructed as to render it impossible or difficult for a person approaching it from the road to

learn of the presence of an oncoming train, or there is evidence of diverting circumstances which tended to throw such person off his guard, the question of a person involved in a collision at such a crossing having been guilty or free from contributory negligence is ordinarily for the jury. It is believed that this pronouncement is in accord with the established law, notwithstanding some uncertainty occasioned by the case of Scherer v. Scandrett, 1944, 235 Iowa 229, 16 N.W.2d 329.

■ However, the situation in the present case is not one ordinarily encountered. In a great many railroad crossing collision cases the injured person survives and is able to testify directly as to his acts or conduct relating to his due care or lack of it. In other cases where the injured person does not survive, favorable direct testimony is available and the loss of the no eyewitness rule by such direct evidence does not prevent the case from being submitted to the jury. In still other cases, the decedent injured in the collision is, because of the factual situation, accorded the benefit of the no eyewitness inference to aid the plaintiff's burden of showing due care. In the present case, the injured party did not survive. His representative did not have the benefit of favorable direct testimony. The only direct testimony was that of Fireman Keith. That testimony prevented the application of the no eyewitness rule. In addition, the testimony of Fireman Keith as an eyewitness was unfavorable to the plaintiff on the issue of contributory negligence.

It is true that the eyewitness did not testify to a speed of the truck driven by Harry E. Mast which was in itself unreasonable. However, the effect of his entire testimony was to show a seeming obliviousness on the part of Harry E. Mast to the fact that he was approaching a place of known danger. It was indicative of the fact that no precautions were taken by him at any time during the period covered by that testimony. While a jury could find that Fireman Keith was so lacking in credibility that no weight should be given to his testimony, their disregard of that evidence would not be of assistance to the plaintiff in proving that precautions were taken by Harry E. Mast for his own safety. There was no other testimony in the record remotely concerned with such precautions, and the circumstantial evidence is as equally indicative of his contributory negligence as it is of his freedom from it. It is possible that had the evidence showed no more than an unsuccessful attempt to avoid the collision, a jury question would have arisen upon the issue of contributory negligence. But even such evidence is lacking.

So far as can be ascertained, the Iowa Supreme Court has never held that a plaintiff proceeding no further than to show that the injured person left home and was killed at an obstructed crossing where no warning was given by the train had made a case submissible to the jury on the issue of freedom from contributory negligence. It is the view of the Court that it cannot be so held in the present case.

It is the holding of the Court that the plaintiff's motion for a new trial is overruled.